429 P.2d 667

The STATE of Arizona, Appellee,

v.

Zora Phine SHAW, Appellant.

No. 2 CA–CR 47.

Court of Appeals of Arizona.

June 30, 1967.

Rehearing Denied Aug. 2, 1967.

Review Denied Oct. 3, 1967.

Darrell F. Smith, Atty. Gen., Gary K. Nelson, Asst. Atty. Gen., Phoenix, William J. Schafer, III, Pima County Atty., Tucson, for appellee.

W. Edward Morgan and Leslie J. Gilbertson, Tucson, for appellant.

KRUCKER, Judge.

An information was filed on September 24, 1964, charging the defendant-appellant, Zora Phine Shaw, with the crime of forgery, two counts, under the provisions of A.R.S. § 13–421. There were two trials, the first trial resulting in a mistrial. At the second trial the defendant was convicted of forgery under count 1; on June 24, 1965, the court, after denying a motion for a new trial, pronounced sentence by suspending the imposition of sentence for a period of two years. From the judgment and order denying a new trial, defendant appeals.

The appeal is based upon two grounds: (1) That the declaration of the mistrial in the first trial acts as a bar to retrial because retrial constitutes double jeopardy. (2) That the State, in permitting a key witness to refuse to testify under the fifth amendment (and refusing to grant such witness immunity from prosecution), deprives the defendant of her rights under the sixth amendment to a fair trial.

The facts leading to the declaration of a mistrial on March 26, 1965, are as follows:

Immediately after the preliminary hearing, the defense attorney and a deputy county attorney made an oral agreement to submit specimens of the defendant's hand-

writing to an expert in the office of the District Attorney of Los Angeles. A letter to this expert was prepared and sent by defense counsel to the Pima County Attorney's office for signature. The letter was never sent or signed. On November 25, 1964, the defense attorney wrote to the deputy county attorney, inquiring about the matter. On December 3, 1964, another deputy county attorney (and the prosecutor at the two trials) wrote to defense counsel stating, in part: "* * * this office does not feel that it is feasible to rely entirely upon a handwriting expert's opinion of whether or not the forged signatures on the credit slips are those of Zora Shaw." Defense counsel contends: that this refusal on the part of the State to carry out its agreement forced him to then seek out the person who had in fact signed the credit slips; and that he did not have an opportunity to talk with this person until the morning of the trial. At that time, he states, the true signer of the slips confessed to him that she had signed them. He immediately took the woman to the trial judge's chambers. The judge told her of her fifth-amendment right to remain silent and advised her to obtain counsel.

When it became apparent that this woman would not testify on behalf of the defendant because of self-incrimination, and that defense counsel would have to testify to the "confession" in his office, he requested a continuance so that Mrs. Shaw might obtain counsel of her choice to conduct her defense. This request for a continuance was opposed by the State and was denied. The next seven days of trial were taken up primarily with argument out of the presence of the jury. At the end of this time, the trial judge came to the conclusion that defense counsel's testimony should be presented, and that a continuance should have been originally granted. As set out in the transcript, defense counsel stated:

"* * * well, my feeling I am willing, Your Honor, that the Court grant a mis-trial to avoid a paradox now. * * * *I would be willing to have the Court grant a mistrial * * **" (Emphasis added)

It is clear that any motion made for a mistrial at this juncture was not a prosecution motion. The deputy county attorney stated:

"My feeling is the motion for mistrial on these grounds should not be granted, * * **"

Subsequently, the defendant's counsel referred to the question of whether a mistrial should be granted as a "motion". Defense counsel stated:

"If the Court resolved that accordingly with *this motion,* I have no further motions." (Emphasis added)

At the conclusion the transcript discloses the following question by the defense attorney:

"Does the Court declare a mistrial as such?" and the response by the court:

"It has."

▇ In Arizona, the right against double jeopardy derives from the Arizona Constitution, Article 2, sec. 10, A.R.S. The Supreme Court of the United States has thus far refused to hold the corresponding federal right applicable to the states. See Palko v. State of Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937); Cichos v. State of Indiana, 385 U.S. 76, 87 S.Ct. 271, 17 L.Ed.2d 175 (1966).

▇ The states are relatively free to adopt their own rules in this area as long as those rules do not constitute a denial of "fundamental fairness." See Brock v. State of North Carolina, 344 U.S. 424, 429, 73 S.Ct. 349, 351, 97 L.Ed. 456, 460 (1953) (Frankfurter, J., Concurring).

▇ Arizona has held that an improperly declared mistrial can bar retrial of a defendant, but not if it is declared upon the defendant's own motion. State v. Dowthard, 92 Ariz. 44, 373 P.2d 357 (1962). The de-

fendant's position, however, is that the mistrial was declared upon the court's motion; that the defense counsel was forced to agree to it because the State's actions, by reneging on its agreement, by failing to make a proper investigation, and by improperly objecting to a continuance, forced the trial judge to take the action he did.[1]

■ The record does not disclose that defendant was forced to consent to a mistrial. No record was made objecting to the granting of a mistrial. We hold under the circumstances that this does not constitute double jeopardy.

We pass on to the contention of error as to upholding the claim of privilege against self-incrimination made by defense witness.

The information as filed in Superior Court on September 24, 1964, charged that in two Tucson stores:

"Zora Phine Shaw did then and there wilfully and with the intent to defraud pass as true and genuine a forged credit sales slip * * * knowing the credit sales slip to be forged, all in violation of A.R.S. § 13–421."

The evidence, as produced by the State, tended to show that Zora Shaw had been present at the time the credit cards used to make out the charge slips were stolen at the commissary at Davis-Monthan from a Mrs. Vavra. Further, the State proved that the defendant and another woman had gone together to two Tucson stores, and both had acquired some merchandise by means of tendering the credit cards for payment.

The testimony which defense counsel was finally allowed to give at the second trial was simply to the effect that the other woman admitted signing the slips. She did not deny that Zora Shaw had been present at the time the slips were forged. In addition, the woman stated that the defendant had known she was forging the signatures. Appellant was present in defense counsel's office and denied knowledge of the forgeries.

It seems reasonably clear that the State knew it could not prove which of the two women had actually signed the charge slip. The State felt, however, that both could be properly convicted as principals under A.R.S. § 13–139, and it was under this theory that the information was filed. The prosecutor, of course, knew that the identity of the signer could be irrelevant, and he thus refused to keep a rather ill-advised agreement. The testimony, as offered by defense counsel, does not operate as a defense to the crime charged, and adds nothing to the testimony given by the defendant at the trial. She admitted being present at the stores when the other woman signed the charge slips, but she denied that she knew the woman was forging Mrs. Vavra's signature. Because of the foregoing, it can be seen that the State's objection to a continuance was not improper, and that it was not mandatory for the State to make a thorough investigation into the handwriting specimens.

■ The defendant urges that in a situation like this, the State should be required to grant a defense witness immunity in order to force him to testify because, without the testimony, the defendant is deprived of the sixth-amendment right to call witnesses in his own behalf. Defendant does not cite any authority directly on this point, and we know of none. This would be a dangerous rule and one we refuse to adopt.

Judgment affirmed.

HATHAWAY, C. J., and MOLLOY, J., concur.

---

1. See Note, Double Jeopardy: The Re-prosecution Problem, 77 Harv.L.Rev. 1272 (1964).