569 P.2d 252

The STATE of Arizona, Appellee,

v.

Adell HENDERSON, Appellant.

No. 1 CA–CR 1720.

Court of Appeals of Arizona,
Division 1,
Department C.

May 17, 1977.

Rehearing Denied July 11, 1977.

Review Denied Sept. 15, 1977.

**312**

Bruce E. Babbitt, Atty. Gen., William J. Schafer, Chief Counsel—Crim. Div., R. Wayne Ford, Asst. Attys. Gen., Phoenix, for appellee.

Ash & Reeb, R. Ray Addington, Mesa, for appellant.

## OPINION

OGG, Judge.

The appellant Adell Henderson appeals from the convictions based upon jury verdicts finding him guilty of five offenses in two separate trials. In the first trial before Judge Morris Rozar appellant was found guilty of the first degree rape and kidnapping of Claudia Mayberry and attempted burglary of the apartment of Janice Morrison. In the second trial before Judge Howard V. Peterson, following one mistrial, appellant was found guilty of the first degree rape of Lynn Ellen Johnson and the concomitant burglary of her apartment. A statement of salient facts follows.

Lynn Ellen Johnson was raped in her apartment in the early morning hours of February 24, 1975. Her assailant gained entry to the apartment by breaking a window and entering her infant daughter's room. When Ms. Johnson went in her daughter's room to investigate, the assailant held a knife to her throat and threatened the life of her daughter if she did not submit. After one or two minutes of confrontation which included some conversation, Ms. Johnson recognized her assailant as the same man she had seen standing outside her daughter's room four days earlier and to whom she had addressed herself, inquiring what he was doing. The assailant completed the crime and left.

Claudia Mayberry was abducted from her apartment and raped in a nearby vacant apartment in the early morning hours of March 6, 1975. Several hours earlier, before she went to bed, one of her apartment windows had been broken. She had been concerned and called a friend. Later, while sleeping, she was awakened by noises and another window was broken. When she tried to use the telephone the line was dead and it was subsequently ascertained that the cable to her apartment had been severed. A male voice outside the second broken window said, "Come out; I know you're in there" and "If you come out, I won't hurt you; if you don't come out, I'm going to come in and kill you." Ms. Mayberry tried to arouse her neighbor by pounding on the apartment wall but when there was no apparent response she did as commanded. She was taken by her assailant to a nearby apartment in the complex, No. 2429, which had recently been vacated by Susan Daniels. Susan Daniels testified at the trial that during the preceding weekend while still occupied by her, the apartment had been broken into by the window and her purse stolen. The purse was later found and returned to her with all of its contents except the keys to her car and the apartment. Marie Amos, who with her husband owned the apartment complex, testified she cleaned and secured apartment No. 2429 on March 5. When Ms. Mayberry's abductor led her into this apartment, the door was not locked.

Appellant was arrested on the night of April 4, 1975, shortly after he was observed by Harry Brennan, breaking a window of an apartment located in the same complex and occupied by Janice Morrison. Ms. Morrison was not in the apartment at the time. Harry Brennan lived in the complex and testified that during the previous month he had seen appellant in the complex area on three different occasions, always alone and at night. Appellant did not live in or near the complex and denied ever being there except on the night of April 4.

Shortly after appellant was arrested he participated in a line-up at the Phoenix Police Station. Detective Nolan who had been investigating the two rape cases called Lynn Johnson and Claudia Mayberry and requested them to view the line-up, indicating he had a suspect in custody. There were a total of six men in the line-up, all male, black and dressed alike. The two women viewed the line-up separately and each had the opportunity to select a statement for the participants to repeat. Each of the women identified appellant as her assailant. Lynn Johnson's identification was somewhat quicker and more positive than Claudia Mayberry's, but the latter made a strong voice identification. After the line-up was over Detective Nolan told the women they identified the man whom he regarded as the likely suspect.

All five offenses were charged in a single information. Appellant's counsel moved to sever all counts for trial. The two rape charges with their connected offenses (burglary in the case of Lynn Johnson, kidnapping in the case of Claudia Mayberry) were severed and the count charging attempted burglary of the Morrison apartment was tried with the offenses against Claudia Mayberry.

Five questions have been presented on appeal:

1. Was appellant twice placed in jeopardy by reason of the declaration of a mistrial after the first trial of the charges relating to Lynn Johnson, when the jury indicated it would be unable to reach a verdict?

2. Was the preindictment line-up unduly suggestive and if it was, did it render the line-up identifications inadmissible?

3. Was it prejudicial error to allow the prosecution to use for impeachment appellant's 1958 convictions in Illinois for armed robbery and assault with intent to murder?

4. Did the trial court abuse its discretion in denying appellant's motion to sever the attempted burglary charge relating to the Morrison apartment from

the charges relating to Claudia Mayberry?

5. Was it error to admit evidence of the burglary of Susan Daniels' apartment and of other incidents of unlawfulness in the apartment complex?

We will consider these issues in order and the last two issues together.

### DOUBLE JEOPARDY

The record before us shows that following selection of the jury the first trial of the Johnson offenses commenced October 14, 1975. The jury began deliberating at 3:52 p. m. on the following day. At 4:14 the jury requested a "read back" of a portion of the testimony, which was denied. Court was reconvened at 4:30 and the jury dismissed until 9:30 a. m. the following morning. At 11:25 a. m. the next day the trial judge was advised by note that the jury was deadlocked and would apparently be unable to reach a verdict. The jury was called to the courtroom and the foreman confirmed his belief that a verdict would not be possible. The court then declared a mistrial and immediately set the date of the new trial.

The record discloses that immediately after this proceeding, the court and both counsel directed questions to one of the jurors, Loren Sullivan. Sullivan was not listed on the panel of jurors selected to try the case and the record indicates that when his presence became known at the end of the trial a stipulation was entered into allowing him to participate in the deliberations.

Appellant's counsel on appeal did not represent him in the trial court. His trial counsel, however, represented him throughout all three trials. No claim of former jeopardy was ever made in the trial court before, during or after the second trial of the Johnson offenses. The issue is raised for the first time on appeal.

Premature declaration of a mistrial after the jury has commenced deliberating can be the basis of a claim of double jeopardy. *United States v. Perez*, 22 U.S. (9

Wheat.) 579, 6 L.Ed. 165 (1824); *Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949); *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *State v. Moore*, 108 Ariz. 532, 502 P.2d 1351 (1972). Were the question properly before us, we would have to determine whether the trial court abused its discretion in declaring a mistrial at the time and under all of the circumstances disclosed by the record before us. *State v. Moore*, supra. Those circumstances would include not only the actual time devoted to deliberating, here approximately two and one-half hours, but also the fact that the jury had "slept" on the case after a relatively short trial and the fact that both court and counsel appeared to be very much concerned with the presence of the unaccounted for juror Sullivan. We would consider, also Justice Holohan's observations in *State v. Moore*, supra:

> A trial judge is often presented with a dilemma in situations involving long deliberation by juries. If he insists on prolonging the deliberation after the jurors have expressed the feeling that they cannot reach a verdict, the trial judge may then be accused of trying to coerce a verdict. *Id.* at 536, 502 P.2d at 1355.

■ We do not reach the issue. While it has been held that double jeopardy may not be raised for the first time on appeal, *State v. Veres*, 7 Ariz.App. 117, 436 P.2d 629 (1968), we do not confine ourselves to that proposition. Consent, in the absence of intentional prosecutorial misconduct or other extraordinary circumstances, removes the bar of double jeopardy, *State v. Marquez*, 113 Ariz. 540, 558 P.2d 692 (1976); *State v. Shaw*, 6 Ariz.App. 33, 429 P.2d 667 (1967). We believe that consent is fairly apparent from the record which has been put before us. See *State v. Ballinger*, 19 Ariz.App. 32, 504 P.2d 955 (1973).

■ Division Two of this court has held that consent will not be inferred from mere silence or failure to object. *State v. Fenton*, 19 Ariz.App. 274, 506 P.2d 665 (1973). We do not disagree with the proposition that consent need not be inferred

from silence alone, but we believe that silence taken together with and in the context of other circumstances can indicate consent. See, generally, Annot., 63 A.L. R.2d 782 (1959). There is considerably more than mere silence here. Appellant's attorney actively participated in interrogating the mysterious juror Sullivan. This was reported as were the in-court proceedings in the declaration of mistrial. There was every opportunity to register the spirit if not the letter of objection, but none is evident. *Cf. State v. Fenton,* supra. Appellant thereafter proceeded through an entire new trial without raising the issue.

The record at the time of mistrial strongly suggests concurrence in the trial judge's action, and the events thereafter are consistent only with and confirm consent.

## THE LINE-UP IDENTIFICATIONS

Pursuant to appellant's motion an extensive "Dessureault hearing" [1] was held prior to trial. In argument at the close of this hearing appellant's attorney made it clear that his motion was directed toward suppression of the victims' identifications at the line-up rather than suppression of the in-court identifications yet to be made. There was no subsequent alteration of this position or objection to the in-court identifications and therefore the question of whether the in-court identifications could be tainted is not before us. *State v. Dessureault*, supra, note 1; *State v. Arnold*, 26 Ariz.App. 542, 549 P.2d 1060 (1976). The question of the admissibility of the line-up identifications remains.

The issue is whether the line-up was unnecessarily suggestive. The trial court held that it was not, and we consequently view any disputed issues of fact as having been resolved in favor of the regularity of the proceedings. There is in the record ample evidence indicating that it was *conducted* fairly, but we are concerned with the following facts which relate to how the line-up was constituted: 1) appellant was 36 years old and the other five participants ranged

---

1. *State v. Dessureault,* 104 Ariz. 380, 453 P.2d 951 (1969).

in age from 20 to 24; 2) appellant was the largest participant in both height and weight; 3) the line-up was held very shortly after appellant was arrested; 4) there was no explanation given as to why all of the other participants were so much younger than appellant and no indication that at least one person closer to appellant's age and of his general description was not available. These factors are significant in view of the fact that although Claudia Mayberry described her attacker as being in his 20s, Lynn Johnson described her attacker as being 32 or 34 and gave cogent reasons why she did not believe he was in his 20s.

 A line-up need not be and seldom can be ideally constituted. See *State v. Lee*, 110 Ariz. 357, 519 P.2d 56 (1974). The question here is a close one. Compare *Conner v. Deramus*, 374 F.Supp. 504 (D.Pa. 1974). We cannot, however, place our stamp of approval on this line-up, in view of the description given by Lynn Johnson. From the record it appears that it was suggestive and unnecessarily so. Appellant was more mature and developed than the other participants.

 This, however, does not end our inquiry. Even though an identification procedure is suggestive, exclusion is not required if from all of the circumstances it appears that the identification was reliable. *State v. Williams*, 113 Ariz. 14, 545 P.2d 938 (1976), citing *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The pertinent factors are stated in *Neil v. Biggers* and quoted in *Williams*:

> '[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.' *Neil v. Biggers*, 409 U.S. at 199, 93 S.Ct. at 382, 34 L.Ed.2d at 411. 545 P.2d at 941–42.

While both of these attacks occurred at night, there was some source of light in both cases. In both cases there was a significant period of conversational confrontation in which the attacker sought to become personally intimate with the victim. The attacker was talkative and spoke with considerable volume. There was thereafter the period of forced sexual intimacy, followed by more conversation, at least on the part of the attacker. Making due allowance for semantics, the description given by the victims were tolerably accurate. Lynn Johnson made a quick and certain identification at the line-up, and although Claudia Mayberry's was less rapid, it was also sufficiently certain. The major point made by appellant at the trial was that the victims did not notice appellant's bad right eye. There was testimony, however, indicating that it was difficult to perceive the eye in the dark unless it was first noticed in the light. It has been held that failure to notice a specific feature goes to the weight of the identification as evidence, and not to its admissibility. *People v. McDaniel*, 19 Ill.App.3d 771, 312 N.E.2d 805 (1974).

We hold that under all of the circumstances the line-up identifications were reliable and therefore they were admissible in evidence.

### PRIOR CONVICTION

Appellant contends that the trial court should not have permitted the prosecution to impeach him on the basis of his 1958 convictions in Illinois for armed robbery and assault with intent to commit murder. Appellant relies upon *Sibley v. Jeffreys*, 76 Ariz. 340, 264 P.2d 831 (1953); *State v. Ross*, 107 Ariz. 240, 485 P.2d 810 (1971); and Chief Justice Burger's well-known opinion in *Gordon v. United States*, 127 U.S.App.D.C. 343, 383 F.2d 936 (1967).

 The determination as to whether or not a prior conviction can be used for impeachment purposes calls for the exercise of discretion. The general guidelines are set forth in *Sibley, Ross* and *Gordon*, supra, and include age, character of the prior offense, the time of its commission, length of

**316**

imprisonment, subsequent conduct and intervening circumstances.

■ Appellant argues that the Illinois convictions do not involve moral turpitude. We disagree, at least in regard to the conviction for armed robbery, see *United States v. Uhl*, 78 F.2d 698 (2nd Cir. 1935), and believe that such a conviction casts a reflection upon credibility. The convictions here were in several counts and apparently arose out of one transaction. The trial court was not asked to distinguish among them.

While these convictions might be deemed remote if age and elapsed time were considered in a vacuum, the record shows that appellant was incarcerated in Illinois from 1958 to 1971 when he was paroled to Arizona and was thereafter returned to Illinois in 1972 as a parole violator. He returned to Arizona upon his second release in 1973. Appellant did not, therefore, have a substantial period of legally blameless life in free society. This was of controlling significance under the rationale of the above authorities and the trial court accordingly did not abuse its discretion in allowing use of the convictions for impeachment.

### SEVERANCE; ADMISSIBILITY OF EVIDENCE

The remaining questions are concerned only with the trial of the offenses committed against Claudia Mayberry and the charge of attempted burglary of Janice Morrison's apartment. The issues are interrelated and will be treated together. The first and major question is whether the attempted burglary charge should have been severed from the other two charges for trial.

■ The state contends that the motion to sever the attempted burglary charge came too late. The record shows that a written motion to sever the attempted burglary count was filed on July 25, 1975. A second and more inclusive motion to sever was filed September 4. Severance of Counts 1 and 2 from Counts 3, 4 and 5 was subsequently granted. Severance of Count 5, the burglary charge, from Counts 3 and 4 was argued at length prior to the beginning of trial and the motion was renewed as required by 17 ARS Rules of Criminal Procedure, rule 13.4(c) prior to the close of all the evidence. There was no waiver.

■ The joinder and severance rules must be read together. Rule 13.3 controls joinder. Subparagraph (a) reads:

Provided that each is stated in a separate count, 2 or more offenses may be joined in an indictment, information, or complaint, if they:

(1) Are of the same or similar character; or

(2) Are based on the same conduct or are otherwise connected together in their commission; or

(3) Are alleged to have been a part of a common scheme or plan.

Rule 13.4 controls severance. Subparagraphs (a) and (b) read:

a. In General. Whenever 2 or more offenses or 2 or more defendants have been joined for trial, and severance of any or all offenses, or of any or all defendants, or both, is necessary to promote a fair determination of the guilt or innocence of any defendant of any offense, the court may on its own initiative, and shall on motion of a party, order such severance.

b. As of Right. The defendant shall be entitled as of right to sever offenses joined only by virtue of Rule 13.3(a)(1).

Our supreme court recently construed these rules in *State v. Dale*, 113 Ariz. 212, 550 P.2d 83 (1976). There, two charges of rape involving two victims were joined for trial. The appellant argued that the two charges were joined only by virtue of rule 13.3(a)(1) and that he therefore had an absolute right to severance. Our supreme court rejected the contention, holding that rule 13.3(a)(3) is coextensive with the "common scheme or plan" exception to the rule against using evidence in one prosecution tending to prove the commission of another distinct and independent crime and further holding that on the record as it existed at the time of the motion to sever, evidence of

the prior rape would be admissible under the sexual propensities rationale of *Taylor v. State,* 55 Ariz. 13, 97 P.2d 543 (1940). There is no indication in *Dale* that a formal allegation of common scheme or plan is necessary.

 There is in the present case no suggestion that the attempted burglary charge was a connected offense within the purview of rule 13.3(a)(2). Under *Dale,* therefore, severance was properly deniable if evidence of the attempted burglary was admissible in respect to the rape and kidnapping charges, which clearly were connected offenses. Further, under the supreme court's practical holding in *Dale,* if evidence of the attempted burglary was admissible under any other theory advanced, it could not be prejudicial or an abuse of discretion to try the charges together.

The acts giving rise to the attempted burglary charge took place 29 days after the rape and kidnapping. The common factors presented to the trial court were: 1) Janice Morrison's apartment was in the same apartment complex; 2) Janice Morrison was a young, white, unattached woman like Claudia Mayberry; 3) all events in question took place in the nighttime; 4) all of the windows involved were broken in a somewhat similar manner, leaving a roughly circular hole of varying size in a pane within reaching distance of the latch. The trial court was advised by defense counsel however, that nobody was in the Morrison apartment when the breaking occurred.

 We start with the general rule that:

> In the prosecution of one accused of a particular offense, evidence showing or tending to show the commission by accused of another crime entirely distinct and independent of that for which he is on trial, even though it be a crime of the same class, is neither relevant nor admissible.

*Dorsey v. State,* 25 Ariz. 139, 143, 213 P. 1011, 1012 (1923); quoted in *State v. Moore,* 108 Ariz. 215, 216–17, 495 P.2d 445, 446–47 (1972).

The exceptions to the rule are when evidence of the other criminal conduct tends to establish: 1) motive; 2) intent; 3) the absence of mistake or accident; 4) a common scheme or plan embracing the commission of two or more crimes, so related to each other that proof of one tends to establish the other or others; 5) the identity of the person charged with the commission of the crime on trial. *State v. Moore,* supra at 217, 495 P.2d at 447; *State v. Akins,* 94 Ariz. 263, 383 P.2d 180 (1963); *Greve v. State,* 36 Ariz. 325, 285 P. 274 (1930); *Udall, Arizona Law of Evidence,* § 115 (1960).

 Motive, intent, and the absence of mistake or accident were not in issue in the rape and kidnapping charges and admission of evidence as to the attempted burglary could not be predicated on those bases. *State v. Tuell,* 112 Ariz. 340, 541 P.2d 1142 (1975). The closest case that has come to our attention with respect to common scheme or plan is *State v. Kelly,* 111 Ariz. 181, 526 P.2d 720 (1974). There, the rapist had a steak knife with a serrated edge and a wooden handle. When the defendant Kelly was arrested one week later, peering into a motel window, he was carrying in his pocket a knife with a serrated edge and wooden handle. There were also footprints around the rape victim's window.

While there are some analogies to be drawn between *Kelly* and this case, there are also important differences and we believe that the *Kelly* holding is near the outer limits of the common scheme or plan exception. Beyond those limits lies the strong policy against admitting evidence of another crime, forcefully expressed in *State v. Moore,* supra. Although as *Kelly* indicates the trial judge has some discretion in the matter, *Moore* quotes Oklahoma authority to the effect that any doubts are to be resolved in favor of excluding evidence of extraneous criminal conduct. 108 Ariz. at 218, 495 P.2d at 448, quoting from *Hardin v. State,* 462 P.2d 357, 359–60 (Okla.Cr.1969). See also, *State v. Tuell,* supra.

With due regard to the policy expressed in *Moore* and *Tuell,* we are compelled to agree with appellant's counsel that Count 5

charged an essentially separate and distinct burglary, committed 29 days after the rape and kidnapping. As opposed to *Kelly* the method employed did not demonstrate a specific propensity of a sexual nature and was not sufficiently unique or distinctive as a *modus operandi* to show either common scheme and plan or identity. Contrast *People v. Matson,* 13 Cal.3d 35, 117 Cal.Rptr. 664, 528 P.2d 752 (1974) (subsequent burglary where entry was gained by similar conduct) and *Burnett v. State,* 234 Ga. 741, 218 S.E.2d 4 (1975) (several sexual attacks in the same apartment complex). The state has not cited and we have not found any authority with the evidentiary latitude for which it argues here. In our view, evidence as to the subsequent burglary was not admissible on the basis of any exception to the general rule stated above.

The state argues that the evidence showing an unlawful entry into the apartment of Susan Daniels furnishes the "common denominator" or nexus between the rape and the attempted burglary. The rape was committed in the apartment just recently vacated by Susan Daniels and it was also the situs of the completed kidnapping. Since the evidence tended to show the apartment had been locked the day before, evidence of the recent burglary of the apartment was admissible for the purpose of completing the story of the crime; that is, the evidence offered an explanation as to how the empty apartment came to be used in the commission of the crimes. See *State v. Jackson,* 112 Ariz. 149, 539 P.2d 906 (1975); *State v. Babineaux,* 22 Ariz.App. 322, 526 P.2d 1277 (1974). Such evidence was admissible even though it suggested that appellant might possibly have committed another offense. *People v. Rogers,* 71 Cal. 565, 12 P. 679 (1887); *Udall, Arizona Law of Evidence* § 115 (1960); *Jackson,* supra; and *Babineaux,* supra.

The state did not, however, attempt to directly connect appellant with the burglary of Susan Daniels' apartment. Therefore, while admissible under the "complete story" doctrine, the evidence relating to the burglary of Susan Daniels' apartment did not tend to establish with certainty appellant's

responsibility for that crime. That being the case, the state cannot use that burglary as a basis for bringing the attempted burglary of the Morrison apartment into the case. *State v. Marahrens,* 114 Ariz. 304, 560 P.2d 1211 (1977).

We are accordingly compelled to conclude that the attempted burglary charge was not properly joined with the other two charges pursuant to rule 13.3. Not being properly joined, they were subject to severance upon timely motion. See *State v. Williams,* 108 Ariz. 382, 499 P.2d 97 (1972), and the cases cited therein. Still, a reservoir of discretion is vested in the trial court in matters of joinder and severance. *State v. Dale,* supra. This means in the context of a case like the present one that the trial court could be proven ultimately wrong on the evidentiary issues involved and still, in an appropriate case, have had sufficient reason to deny severance at the beginning of the trial. While the prosecutor's assessment of the state's case proved to be somewhat optimistic, we do not think that this principle can be applied here because of the overriding importance of the issue of identity in the more serious two charges and the inevitable tendency of the presence of the attempted burglary charge to confuse and prejudice determination of that issue. The rules on joinder and severance are designed to promote liberal joinder and *liberal severance.* ABA Standards Relating to Joinder and Severance § 2.2 (1968). We hold that appellant's motion to sever Count 5 from Counts 3 and 4 should have been granted.

We do not believe that any other issues require discussion inasmuch as they are unlikely to recur in the new trials.

## MATTERS RELATING TO COUNSEL

After this case became at issue, appellant tendered to this court a handwritten "Motion in Opposition." This document purported to question the competence of his attorney in the trial court. The communication to the clerk of this court stated that the document was first presented to appel-

lant's appointed counsel in this court, who returned it to appellant with comments to the effect that he saw no merit in appellant's suggestions of incompetency.

■ The "Motion In Opposition" seems to suggest that trial counsel did not undertake certain investigations. None of the matters advanced bear upon the questions presented by counsel on appeal, nor are we able to perceive in any of the matters advanced in the "Motion In Opposition" the substance of any additional issue on appeal nor any arguable circumstances pointing to the incompetence of trial counsel under the established standard. See, e. g., *State v. Smith,* 112 Ariz. 208, 540 P.2d 680 (1975). If there are other matters outside the record and the scope of this appeal which bear upon appellant's assertions, they must be developed in an independent proceeding.

■ Appellant in his "Motion In Opposition" expressed satisfaction with his counsel on appeal. He subsequently sent a letter to the clerk of this court expressing dissatisfaction with his counsel on appeal, citing counsel's failure to provide him with a copy of a transcript of certain testimony given by a minor in chambers. The minor was not a witness at the trial. The transcript was not material to any issue on appeal. Another department of this court treated this letter as a motion for appointment of new counsel and, noting the case was ripe for disposition, denied the motion.

It is apparent to this court that appellant has been adequately represented by counsel in regard to this appeal and in the absence of any new and cogent grounds for substitution, no reason appears to this court why presently appointed counsel should not continue to represent appellant through termination of appellate proceedings.

## CONCLUSION

Appellant's convictions on Counts 1 and 2 charging the first degree rape of Lynn Ellen Johnson and the first degree burglary

of her apartment are in all respects affirmed.[2] The sentences imposed of not less than 90 nor more than 95 years for rape, and not less than 14 nor more than 15 years for burglary are affirmed.

Appellant's convictions and the sentences imposed for the offenses charged in Counts 3, 4 and 5 of the information are reversed and the charges are remanded for a new trial.

FROEB, C. J., Division 1 and JACOBSON, P. J., Department C, concur.

---

2. Appellant "drew the sting" and testified on direct examination in the trial on counts 1 and 2 that he had been recently convicted of rape and burglary. The prosecutor enlarged upon this, without objection, only to include the conviction for kidnapping. There is therefore no question of error in regard to evidence of conviction on counts 3, 4 and 5. *Cf. State v. Kiser,* 111 Ariz. 316, 529 P.2d 215 (1974).