927 P.2d 762

**STATE of Arizona, Appellee.**

v.

**Craig Alan IVES, Appellant.**

**No. CR–95–0360–PR.**

Supreme Court of Arizona.

Nov. 7, 1996.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Diane M. Ramsey, Assistant Attorney General, Joseph T. Maziarz, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by James R. Rummage, Deputy County Public Defender, Phoenix, for Appellant.

## OPINION

MOELLER, Justice.

### FACTS AND PROCEDURAL HISTORY

Defendant Ives was charged with four counts of child molestation. The four counts alleged defendant "directly or indirectly touch[ed] the private parts" of each of three victims. Defendant moved to sever, contending that because the counts were joined pursuant to Rule 13.3(a)(1), Ariz. R.Crim. P. (allowing joinder of similar offenses), he was entitled to severance as a matter of right under Rule 13.4, Ariz. R.Crim. P. The trial judge denied the motion, holding the counts were properly joined pursuant to Rule 13.3(a)(3) (allowing joinder of acts that are part of a common scheme or plan), and, therefore, defendant was not entitled to sever the counts as a matter of right under Rule 13.4.

At trial, each of the three victims testified. To resolve the issues presented by this appeal, a reasonably detailed summary of the trial testimony is helpful. T.C., the named victim in Count I, was ten years old at the

time of her testimony. She testified that defendant, on separate occasions when she was eight, touched her "private parts" by "patt[ing] [her] on the butt," rubbing her "front private" under her dress but over her panties, and "touching . . . skin to skin on [her] butt." T.C. also testified that defendant licked her in her ear. On at least two of these occasions, T.C.'s sister was present in the same room during the molestation but apparently saw nothing. T.C. told her sister about these incidents approximately two weeks after they occurred. The state alleged these acts occurred about nineteen months before the trial.

The second victim, L.M., was nine years old when she testified. She stated that defendant picked her up "by [her] bottom" in order to help her reach some plates which were in a cabinet. L.M. testified that defendant then asked her where some cups were located and picked her up a second time to get them. She could not remember how defendant picked her up the second time. At the time of these touchings, both L.M.'s sister and father were at home with her.

Later, after L.M.'s mother returned home, defendant invited L.M. to have a drink of his soda while he sat on the living room couch. When she stood next to him, he rubbed her on her "bottom." Defendant then offered her another drink. L.M. testified she was scared when defendant looked at her and "his eyes got big." She went to the couch and defendant rubbed her on her "front" or "nocha" (vagina) and "bottom," over her pants but under her dress. L.M. told her mother what happened soon thereafter. She testified that as defendant left, he passed by a window, looked in at L.M., put his finger to his lips, and motioned for her to be quiet. The state claimed these acts occurred about thirty-eight months before trial.

The third victim to testify was C.H. She was fifteen years old at the time of trial. She testified that while she, her family, and defendant were painting her house, defendant waved her over to him and touched her vagina over her clothes. C.H. also testified that on another occasion, defendant took her mother, brother, and C.H. to the store in his truck. While her mother was in the store, defendant again motioned C.H. over to him and touched her vagina over her clothing. C.H.'s brother, who was also in the truck at the time, was apparently distracted and saw nothing. C.H. told her father what happened that evening. The state alleged that these acts occurred sometime between June 1, 1985, and January 31, 1986, which placed the events between seven and eight years before trial.

Defendant renewed his motion to sever following the testimony of the three victims. The trial judge again denied the motion. Moreover, the trial judge permitted the state, under Rule 404(b), Ariz. R. Evid., to introduce the testimony of a fourth girl, T.J., as a witness of "other acts."[1] T.J. was fifteen years old at the time of her testimony. She testified that eleven years earlier, when she was four years old, defendant touched her vagina over her clothing after he had been pushing her on a swing. Her parents and brother were inside her house at the time. T.J. testified that on a different occasion, defendant touched her over her bathing suit while she was standing in a backyard pool.

T.J. described two other incidents. In one, defendant again touched her vagina over her swim suit. In the other, he repeatedly rubbed her vagina over her clothing while the two were reading on a couch in her living room. T.J. testified that it was unlikely she would have been home alone in any of these instances. The acts took place in the summer of 1982, at least three years prior to any of the activities described by the three victims.

Defendant presented evidence that one of the victims, L.M., had told defendant's previous counsel that she had never "been touched in the area that she used to go to the bathroom." Defendant testified in his own de-

---

1. When he made his ruling permitting T.J.'s testimony, the judge referred to his "earlier ruling." We can find no prior ruling separately addressing T.J.'s testimony. The state filed its Motion to Admit Prior Bad Acts on November 5, 1992, but the trial court apparently addressed this motion only by way of a minute entry denying defendant's motion to sever, in which he grouped the three victims and the prior bad act witness together as "four victims."

fense and denied ever having touched any of the girls in a sexual manner. The only touching which defendant admitted was steadying L.M. in order for her to get plates down and drying off T.J. at the request of her parents.

In its closing argument, the state relied heavily on the fact that defendant was charged with several similar crimes:

> [O]ne thing that you've learned through this trial is that the victims' testimony ... is very similar.... He picks [L.M.] up by the buttocks.... Real similar to the type of touching he did with respect to [T.C.].... Keep in mind with respect to [T.C.] and [L.M.] .... almost identical conduct.... [W]hat [this consistency] tells us is that ... this is the way the defendant touches little girls.... *And so by using the similarities in each case ... it helps us to see that the girls are being truthful.*

(Emphasis added.) Defendant responded in his own closing argument by attacking the credibility of the victims' testimony. In particular, he pointed out the inconsistencies in T.C.'s testimony, relying in part on the following exchange from her cross-examination of T.C.:

> Q: [The molestation] was something that was important to your parents too, right?
>
> A: Right.
>
> Q: So it is something that you talked about?
>
> A: Yes.
>
> Q: So your memory of what happened was, helped along by those conversations that your parents had?
>
> A: Yes.
>
> Q: So you don't really have any independent memory of what happened that day, do you?
>
> A: No.
>
> Q: It's just based upon what you heard your parents say?
>
> A: Yes.
>
> [ ... ]
>
> Q: Do you remember was it summertime?

> A: No.... It was winter.
>
> [ ... ]
>
> Q: What months come during the wintertime?
>
> A: I don't know.
>
> Q: Is June during the winter?
>
> A: Yes.

The jury convicted defendant on all counts. The trial judge, noting his own opinion that the sentence was "unduly high," nevertheless followed the statutory sentencing scheme and sentenced defendant to sixty-eight years flat time: four consecutive, presumptive seventeen-year sentences to be served day for day. Defendant filed a motion to vacate judgment and sentence on the basis of newly-discovered evidence that L.M. had not only recanted to defendant's former counsel, but had also recanted to the previous prosecutor and to her mother. Defendant contended that this evidence would probably have changed the verdict and, therefore, requested a new trial as to all counts. The trial court granted the motion only as to the count involving L.M. At the state's request, the dismissal was without prejudice.

The court of appeals affirmed the convictions on the remaining three counts in a memorandum decision. Defendant petitioned this court to review the issue of whether "the trial court incorrectly concluded that the counts against [Ives] were properly joined as part of a 'common scheme or plan,' and whether evidence of each count, as well as other bad act evidence, would have been inadmissible at separate trials on each of the other counts had those counts been severed for trial." We granted review and have jurisdiction pursuant to Ariz. Const. art. VI, § 5(3), Ariz.Rev.Stat. Ann. (A.R.S.) § 12–120.24, and Ariz. R.Crim. P. 31.19.

## ISSUES PRESENTED

1. Whether defendant was entitled to a severance as a matter of right.

2. Whether denial of a severance, if error, was harmless error.

## DISCUSSION

### I. Was defendant entitled to severance as a matter of right?

■ Rule 13.3(a)(1), Ariz. R.Crim. P., allows joinder of offenses if they "[a]re of the same or similar character." Rule 13.3(a)(3) allows joinder of offenses "alleged to have been a part of a common scheme or plan." Rule 13.4(b) grants to the defendant the right to sever offenses joined by virtue of Rule 13.3(a)(1) (same or similar character). Thus, if offenses are joined only because they are "of the same or similar character," the defendant may always sever them.

■ However, even if defendant is entitled to severance as a matter of right, the denial of severance is reversible error only if the evidence of other crimes would not have been admitted at trial "for an evidentiary purpose anyway." *State v. Stuard*, 176 Ariz. 589, 596–97, 863 P.2d 881, 888–89 (1993) (quoting Morris K. Udall, *et al.*, *Arizona Practice: Law of Evidence* § 84, at 184 n. 14 (3d ed. 1991) [hereinafter *"Arizona Evidence"*]); *see also State v. Van Winkle*, 186 Ariz. 336, 340, 922 P.2d 301, 305 (1996) (Defendant is not entitled to a trial separate from his co-defendant on a "rub-off" theory if the same evidence would be admissible in defendant's separate trial.). Thus, analysis of Rule 13.3(a)(1) is related in part to Rule 404(b), Ariz. R. Evid.; if a defendant's motion to sever is denied and joinder was based only on the similarity between the offenses, defendant only has a remedy if the prior act evidence would not have been admissible under Rule 404(b). The court of appeals affirmed the trial court's holding that joinder was based not on similarity (Rule 13.3(a)(1)), but on "common scheme or plan" under Rule 13.3(a)(3). That being the case, the court reasoned defendant was not entitled to severance as a matter of right. Instead, he was entitled to severance only if he could show prejudice by the joinder. According to the court of appeals, he could not demonstrate prejudice because all of the evidence would have been admissible at trial on any of the counts. The court of appeals based its holding of "common scheme or plan" upon the "visual connection" between the crimes. Although there are Arizona cases that support the court of appeals' decision, we do not agree with them.

■ Some Arizona cases have held proof of a "common scheme or plan" requires nothing more than proof of a "visual connection" between the crimes and a "visual connection" is established when "similarities exist where one would normally expect to find differences." *State v. Walden*, 183 Ariz. 595, 605, 905 P.2d 974, 984 (1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1444, 134 L.Ed.2d 564 (1996); *see also State v. Day*, 148 Ariz. 490, 493–94, 715 P.2d 743, 746–47 (1986); *State v. Lucas*, 146 Ariz. 597, 601–02, 708 P.2d 81, 85–86 (1985); *State v. Bravo*, 171 Ariz. 132, 138–39, 829 P.2d 322, 328–29 (App.1991). A few cases have employed an even broader definition of common scheme; "similar and related conduct" and "substantial similarities" alone have been held sufficient to establish a common scheme. *See State v. Newman*, 122 Ariz. 433, 436, 595 P.2d 665, 668 (1979); *State v. Rodriquez*, 145 Ariz. 157, 170, 700 P.2d 855, 868 (App.1984).

Some Arizona cases, however, have employed a far narrower "common scheme or plan" definition. According to this narrower definition, the state must demonstrate that the other act is part of "a particular plan of which the charged crime is a part." *See State v. Ramirez Enriquez*, 153 Ariz. 431, 433, 737 P.2d 407, 409 (App.1987) (defining "common scheme or plan" in the context of Rule 404(b), Ariz. R. Evid.); *State v. Torres*, 162 Ariz. 70, 73, 781 P.2d 47, 50 (App.1989). In *Ramirez Enriquez*, the defendant was convicted of selling marijuana. 153 Ariz. at 432, 737 P.2d at 408. The state introduced evidence of "other occasions on which defendant sold marijuana. . . ." *Id.* The court held that

> [t]he common plan or scheme exception does not permit proof that the defendant is a long time drug dealer or burglar. . . . *The distinction is between proving a specific plan embracing the charged crime and proving a general commitment to criminality which might well have involved the charged crime.'*

*Id.* at 432–33, 737 P.2d at 408–09 (emphasis added) (quoting Morris K. Udall, *et al.*, *Ari-*

zona Practice: Law of Evidence § 84, at 184 n. 17 (2d ed. 1982)). *Ramirez Enriquez,* in contrast to many Arizona cases, suggests that a mere similarity between acts (or a "visual connection") does not, by itself, prove those acts to be part of the same "common scheme or plan."

Nor is *Ramirez Enriquez* the lone case in support of the narrower approach. In *State v. Torres,* the court cited favorably Judge Livermore's opinion in *Ramirez Enriquez* and quoted that case's definition of common scheme as "a particular plan of which the charged crime is a part." *Torres,* 162 Ariz. at 73, 781 P.2d at 50 (quoting *Ramirez Enriquez,* 153 Ariz. at 433, 737 P.2d at 409). Likewise, in *State v. Henderson,* the court seemed to question the common scheme or plan conclusion of *State v. Kelly,* 111 Ariz. 181, 526 P.2d 720 (1974), *cert. denied,* 420 U.S. 935, 95 S.Ct. 1143, 43 L.Ed.2d 411 (1975), noting *Kelly*'s facts were "near the outer limits of the common scheme or plan exception." *Henderson,* 116 Ariz. 310, 317–18, 569 P.2d 252, 259–60 (App.1977). *Kelly* involved a rapist whose footprints were found behind and on the side of his victim's home and who was armed with a knife with a serrated edge and a wooden handle. 111 Ariz. at 183–84, 526 P.2d at 722–23. He was arrested one week later when he was found looking into a motel window carrying a knife with a serrated edge and a wooden handle. *Id.* at 184, 526 P.2d at 723.

In *Henderson,* the defendant committed two rapes about ten days apart. 116 Ariz. at 312, 569 P.2d at 254. In each rape, he broke a window at his victim's apartment. *Id.* The defendant was caught during a third incident when he broke the window of a woman's apartment in the same complex where he had committed one of the previous rapes. *Id. Henderson,* by indicating that the facts in *Kelly* represented the outer limits of Rule 13.3's "common scheme or plan" definition, and by refusing to extend the common scheme definition to its own set of very similar acts, established a limit which other courts employing the broader definition have exceeded.

Recently, this court implicitly adopted the narrower, *Ramirez Enriquez* definition of

"common scheme or plan" in *State v. Stuard,* 176 Ariz. 589, 863 P.2d 881 (1993). In *Stuard,* the defendant was convicted of, among other crimes, three counts of murder and one count of attempted murder. 176 Ariz. at 593, 863 P.2d at 885. Defendant had killed, within a period of days, three elderly women who lived in the same neighborhood. *Id.* at 593–95, 863 P.2d at 885–87. Nearly three months later, the fourth victim was attacked. *Id.* She lived in a different neighborhood and survived the assault. *Id.* However, the last attack "shared distinctive features" with all of the murders. *Id.* at 598, 863 P.2d at 890. Yet, we stated that "[a]side from the series of crimes themselves, there is little evidence of any scheme or plan and considerable evidence to the contrary." *Id.* at 597, 863 P.2d at 889.

Although *Ramirez Enriquez, Torres,* and *Stuard* represent a distinct line of precedent running counter to the broader definition of "common scheme or plan" used in many cases, this is not to say that the court of appeals (or the trial judge) ignored precedent in this case. Unfortunately, neither *Ramirez Enriquez* nor *Torres* explicitly recognized a conflict in the way Arizona courts define "common scheme or plan." Moreover, in *Stuard,* we held that the evidence of other crimes would have been admissible under the identity exception to Rule 404(b), Ariz. R. Evid. 176 Ariz. at 599, 863 P.2d at 891. Thus, our reference to a narrower understanding of "common scheme or plan" was not dispositive in that case, and *Stuard* made no reference to the conflict between that decision and the previous cases employing a broad definition of "common scheme or plan." Because the instant case squarely presents the issue, and because there is a clear conflict in the case law, we now decide that the narrower definition of "common scheme or plan" as described in *Ramirez Enriquez* is the better and proper definition and adopt it for use in all cases in which convictions have not become final (on direct appeal or by expiration of time for direct appeal) as of the date of filing this opinion.

We adopt this narrower definition because any other result blends Rule 13.3(a)(1) (same or similar character), and Rule 13.3(a)(3)

(common scheme or plan), beyond recognition. If common scheme is merely a "visual connection" manifested by "similarities where one would expect differences," Rule 13.3(a)(3) becomes a detour around defendant's right to sever offenses joined because they are similar. In fact, the cases employing the broad definition of common scheme have simply listed similarities between crimes in order to show the "common scheme or plan" definition was met. *See Walden,* 183 Ariz. at 605–06, 905 P.2d at 984–85; *Day,* 148 Ariz. at 494, 715 P.2d at 747; *Lucas,* 146 Ariz. at 601–02, 708 P.2d at 85–86; *Newman,* 122 Ariz. at 436, 595 P.2d at 668; *Bravo,* 171 Ariz. at 138–39, 829 P.2d at 328–29; *Rodriquez,* 145 Ariz. at 170, 700 P.2d at 868.

This approach runs counter to the very reason Rule 13.3 was adopted. In the comment to subsection (a) (permitting joinder of similar offenses), the drafters of the rule note that:

> This rule does not materially alter Arizona law except in one situation.... Under the case law, if the state relies on a series of acts to show criminal conduct, those acts must be sufficiently related, in time and relationship to a common plan or scheme to be considered a single criminal offense. This rule, on the other hand, will allow joinder of offenses which are of the same or similar character whether or not they are part of a single plan.

Ariz. R.Crim. P. 13.3(a) cmt. (citation omitted). The drafters of Rule 13.3 presupposed a clear distinction between the "similarity" inquiry and the "common scheme or plan" inquiry. The comment indicates that the component acts of a "common scheme or plan" must be sufficiently related to be considered a single criminal offense. We take this to be a restatement of the *Ramirez Enriquez* holding that the "common scheme or plan" must be "a particular plan of which the charged crime is a part." 153 Ariz. at 432–33, 737 P.2d at 408–09. A broad definition of "common scheme or plan" allows the state to raise the inference of guilt based solely on a "disposition toward criminality." *See id.* at 432, 737 P.2d at 408. We believe that "common scheme or plan" as used in Rule 13.3(a)(3), Ariz. R.Crim. P., and as referenced in Rule 404(b), Ariz. R. Evid., should not be read so as to allow joinder (or introduction) of other crimes or acts simply because those acts "show similarities where one would expect differences" or demonstrate a "visual connection" to the other charged offenses.

■ In this case, the trial judge used the broad definition of "common scheme or plan" when he denied defendant's motion to sever. In his minute entry denying the motion, the trial judge noted that "if there is a 'visual connection' between or among two or more similar offenses, they may be joined and proven at trial...." The trial judge then proceeded to list five similarities he perceived the acts to share.[2] The trial judge then observed:

> [I]t strikes me as unusual that a friend of the family would molest children of an age able and likely to report.... It seems unusual that a molester ... would choose the home as the site for molests.... For such a person to perform such acts when other family members are present in the home ... seems highly unusual.... [I]t appears unusual that ... wrongdoers would limit their assaults to rubbing the vagina over the clothing in so many cases.

The judge held that "these unique similarities" showed "such a connection between and among the described incidents" that they established a common scheme or plan.

Given the narrow definition we have adopted, it is clear that the acts committed

---

2. These similarities were:

1. All of the alleged victims' ages were in the single-digit, pre-pubescent stage ...;
2. The defendant knew all four girls before the alleged acts of molestation, having met each victim through her father or a family friend;
3. All of the eleven separate acts (except one) ... occurred at the victims' homes;
4. In all instances, including the incident in defendant's truck, a family member was at home or in the vehicle when the acts are said to have happened;
5. Defendant is claimed to have rubbed the girls' vaginas over their clothing, and that alone, in seven of the eleven incidents; in three he is said to have rubbed their bare or clothed buttocks, either along with or in addition to rubbing the vaginas.

with these four girls, separated in time by as much as seven years or more, are not acts of "a particular plan of which the charged crime is a part." *See Ramirez Enriquez*, 153 Ariz. at 433, 737 P.2d at 409. The type of speculation that the trial court felt was appropriate in this case will, we hope, be minimized in future cases, because the inquiry should hereafter focus on whether the acts are part of an over-arching criminal plan, and not on whether the acts are merely similar. Similarity and modus operandi may establish identity, but not establish a common scheme or plan. Because the acts in the instant case are merely similar, and because identity and modus operandi are not in issue in this case, defendant's motion for severance should have been granted.

## II. Was the denial of defendant's motion to sever harmless error?

■ Having held it was error to deny defendant's motion to sever, we must still determine if the error was harmless. If the evidence could have been introduced at separate trials (under Rule 404(b), Ariz. R. Evid.), then defendant will not receive a new trial based on the error. *See State v. Stuard*, 176 Ariz. at 597, 863 P.2d at 889. Rule 404(b) provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Ariz. R. Evid. 404(b). Identity was never in issue in this case and the state does not attempt to justify admission of the other acts on that ground. The state does argue, however, that the acts demonstrated a "common scheme or plan." Presumably, the state refers to the "plan" exception in Rule 404(b), because the state did not mention Rule 13.3 in its response to defendant's petition and did not argue "common scheme or plan" under Rule 13.3 in its brief before the court of appeals. However, this argument lacks merit because, as we noted above, the definition of "common scheme or plan" under Rule 13.3

and the definition of "plan" as used in Rule 404(b), are coextensive. *State v. Tipton*, 119 Ariz. 386, 388, 581 P.2d 231, 233 (1978); *State v. Hanson*, 138 Ariz. 296, 302, 674 P.2d 850, 856 (App.1983).

The state also contends the acts were admissible "to show intent and lack of mistake or accident." As noted above, defendant denied ever having touched any of the girls in a sexual manner. *See supra* at 105, 927 P.2d at 765. The only touching to which defendant admitted was steadying L.M. in order for her to get plates down and drying off T.J. at the request of her parents.

Courts are split on the issue of whether a defendant may remove intent as an issue by a blanket denial of participation in a criminal act. The Seventh Circuit Court of Appeals, for example, has held that "[i]n cases involving specific intent crimes, intent is automatically an issue, regardless of whether the defendant has made intent an issue in the case." *United States v. Mazzanti*, 888 F.2d 1165, 1171 (7th Cir.1989) (quoting *United States v. Monzon*, 869 F.2d 338, 344 (7th Cir.), *cert. denied*, 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989)), *cert. denied*, 495 U.S. 930, 110 S.Ct. 2167, 109 L.Ed.2d 497 (1990). In *Mazzanti*, the court concluded that the defendant's "blanket denial of any wrongdoing ... was meant to negate any evidence of intent," and therefore that introduction of other act evidence was permissible. 888 F.2d at 1171.

The Second Circuit has taken a different approach. In *United States v. Colon*, the court noted that:

> Our cases have thus recognized a distinction between defense theories that claim that the defendant did not do the charged act at all, and those that claim that the defendant did the act innocently or mistakenly, with only the latter truly raising a disputed issue of intent.

880 F.2d 650, 657 (2nd Cir.1989). In *Colon*, defendant shifted his theory of defense before trial, from one which raised the issue of intent to one that did not. *Id.* at 658. The court held that "to take [the intent issue] out of a case, a defendant must make some statement to the court of sufficient clarity to indicate that the issue will not be disputed."

*Id.* at 659. However, the court determined that although defendant did not explicitly alert the trial court that his second theory removed intent as an issue from the case, the circumstances were sufficient to show that the second theory was "an offer to stipulate intent out of the case." *Id.*

We prefer the approach in *Colon* to that in *Mazzanti.* Otherwise, the general rule prohibiting introduction of prior bad acts to show character would never apply to specific intent crimes because intent would always be at issue. This, we believe, cuts too deeply into the rule against character evidence. Moreover, it does so based on a nearly meaningless distinction. As the instant case amply demonstrates, sometimes even specific intent crimes do not put intent at issue. Even a cursory reading of the record below indicates that the issue in this case was whether the defendant committed the acts at all, not what his state of mind was when he committed them.

▓▓▓ We do not believe that in a case such as this, absent another legitimate 404(b) purpose, prior bad acts demonstrate anything beyond an improper character inference. If intent is not at issue, and no other valid 404(b) grounds exist, we fail to see why propensity evidence is permissible in specific intent cases but not those involving general intent crimes. Instead, we adopt the *Colon* approach. This approach best avoids the danger of an impermissible character inference, such as the one addressed by the Ninth Circuit Court of Appeals in *United States v. Powell:*

> The issue is whether [defendant] was the person who trafficked in this particular marihuana, and the only logical connection between the two marihuana incidents was that a person who has shown a willingness to deal in large quantities of marihuana in one circumstance may be willing to deal in large quantities of marihuana in another. In short, this is the same forbidden use of the prior conviction.

587 F.2d 443, 449 (9th Cir.1978); *see also United States v. Mundi,* 892 F.2d 817, 820 (9th Cir.1989) (allowing proof of prior bad acts to demonstrate intent where defendant's case "largely concerned his lack of criminal intent"), *cert. denied,* 498 U.S. 1119, 111 S.Ct. 1072, 112 L.Ed.2d 1178 (1991). *But see U.S. v. Hadley,* 918 F.2d 848, 851–52 (9th Cir. 1990) (holding *Powell's* reference to the issue of intent is "nonbinding dicta"). Unless there is some discernible issue as to defendant's intent (beyond the fact that the crime charged requires specific intent), the state may not introduce evidence of prior bad acts as part of some generalized need to prove intent in every case.

We note that had the state wished to do so, it could have attempted to introduce the evidence under the "emotional propensity" exception to Rule 404(b). *See State v. McFarlin,* 110 Ariz. 225, 228, 517 P.2d 87, 90 (1973); *State v. Treadaway,* 116 Ariz. 163, 165–68, 568 P.2d 1061, 1063–69 (1977); *State ex rel. LaSota v. Corcoran,* 119 Ariz. 573, 575–77, 583 P.2d 229, 231–33 (1978). This approach, however, would have required the state to demonstrate that the acts were similar as well as near in time to each other. *LaSota,* 119 Ariz. at 575–77, 583 P.2d at 231–33. If the court determined that either requirement was not met, the state, to achieve admissibility, would have to present expert testimony showing that the other acts were probative of a sexual propensity to commit the crime. *Id.* Having chosen to avoid this burden, the state may not attempt to raise this same inference under the rubric of "intent." [3]

▓▓▓ Finally, we do not believe *Colon,* read consistently with the facts in that case, imposes a requirement of a "statement" on defendant's part that he wishes to stipulate to intent. The issue apparently arose in that case only because the defendant had shifted his theories, and the state could not be sure if defendant's approach at trial would consistently be to avoid raising the issue of intent. 880 F.2d at 658–59. We believe that in a case such as the instant one, where defen-

---

3. We are aware that the Federal Rules of Evidence, upon which our Rule 404 is based, have been amended and that amendment of our own rules, in accordance with these changes, has been proposed. Rule Petition R–96–0002, Senator Jon Kyl, petitioner. We also note that, after the trial in this case, the legislature enacted A.R.S. § 13–1419, which addresses the admissibility of other acts in sexual offenses. The parties make no contention that the new statute applies to this case and we do not consider it.

dant steadfastly maintains that he simply did not commit any of the criminal acts in question, there is no issue as to intent and no danger of shifting defense theories to justify the admission of the prior bad acts.

■ The state also maintains that the acts would have come in under Rule 404(b) because they showed lack of mistake or accident. As demonstrated above, defendant did not claim that he touched the girls in the proscribed manner but did so by accident or mistake. Instead, defendant consistently maintained he did not touch the girls in any illegal way. *See supra* at 105, 927 P.2d at 765. The state has repeatedly characterized portions of defendant's testimony as admissions of touching the girls. As noted above, however, defendant only admitted that he touched L.M. to help her up to a cabinet and that he touched T.J. to dry her off with a towel at her parents' request. It seems likely that many defendants charged with child molestation will have had occasions for legal touching of the alleged victims.

There is simply no issue in this case as to whether defendant "accidentally" or "mistakenly" rubbed the victims' private parts. Instead, the issue is whether defendant did the acts at all. As the trial transcripts very clearly demonstrate, the issue at trial was one of credibility; did the jurors believe the girls or did they believe defendant? In *Torres,* the court dealt with a similar issue:

> The problem with the state's argument [that prior bad act evidence is admissible to show motive, knowledge, intent, and absence of mistake or accident] is the nature of the defense that Torres presented. He insisted that the heroin was not his, that he did not throw it, and that the officers planted the heroin they said they found in the parking lot. *There is simply nothing in the case which brings into play any issue of motive, knowledge, intent, absence of mistake, or accident. The evidence of prior use of heroin was relevant for only one purpose—to show that because the defendant had once ... used heroin, he must have been in the car for the purpose of purchasing the drug on this occasion. This is precisely what Rule 404(b) forbids.*

*Torres,* 162 Ariz. at 72–73, 781 P.2d at 49–50 (emphasis added). Apart from the fact that this case involves sexual molestation and *Torres* involved illegal drugs, the similarity between the two cases on this issue is striking. Just as in *Torres,* evidence was used in this case to create in the jurors' minds the inference that defendant molested one girl because he allegedly molested others in the past. This is the very inference against which Rule 404(b) is designed to protect.

Finally, as *State v. Stuard* indicates, even if the evidence in a given case does fall within a Rule 404(b) exception, the trial judge may still be called upon, under Rule 403, Ariz. R. Evid., to " 'ensure that the probative value of the evidence for the purpose offered is sufficiently great in the context of the case to warrant running [the] risk' " of unfair prejudice. 176 Ariz. at 599, 863 P.2d at 891 (quoting *Arizona Evidence,* § 84, at 180). In *State v. Taylor,* this court held that "[t]he Rule 403 balancing test 'is important in analyzing any Rule 404(b) evidentiary question,' " 169 Ariz. 121, 125, 817 P.2d 488, 492 (1991) (quoting *State v. Moreno,* 153 Ariz. 67, 69, 734 P.2d 609, 611 (App.1986), *cert. denied,* 484 U.S. 890, 108 S.Ct. 213, 98 L.Ed.2d 177 (1987)), and cited *Arizona Evidence* for the proposition that Rule 403 "should find its most frequent application in this area." *Taylor,* 169 Ariz. at 125, 817 P.2d at 492 (quoting *Arizona Evidence,* § 84, at 179–80 (footnote omitted)).

■ Because the other acts in this case are not admissible under Rule 404(b), there is no occasion to perform a Rule 403 weighing. However, we remind counsel and trial courts in future cases that the inquiry is not complete when a finding on Rule 404(b) admissibility is made. The rules of evidence are designed to provide fair trials, and trial judges should not treat Rule 403 as an empty promise. There will be situations in which evidence sought to be introduced is more prejudicial than probative, and those situations are very likely to arise in the prior bad act context. When called upon to weigh probative value against unfair prejudice under Rule 403, a trial judge must assure the state is not permitted to prove a defendant's guilt of one act through excessively prejudicial evidence of other acts.

## CONCLUSION

■ The trial court erred in holding that the various counts and the prior act evidence

were all part of a "common scheme or plan" within the meaning of Rule 13.3(a)(3). Thus, it was error to deny defendant's motion to sever. Because there is no basis for admitting the evidence under Rule 404(b), Ariz. R. Evid., and we cannot determine beyond a reasonable doubt that the improper evidence did not contribute to the verdict, the error is not harmless. Therefore, new trials are necessary. Defendant's convictions and sentences are vacated, and this case is remanded to the trial court for proceedings consistent with this opinion. The memorandum decision of the court of appeals is vacated.

FELDMAN, C.J., ZLAKET, V.C.J., and MARTONE, J., and ARES, Judge Pro Tem.

Justice ROBERT J. CORCORAN (Retired) did not participate in this matter; pursuant to Ariz. Const. art. VI, § 3, Judge Pro Tempore Charles E. Ares of the Court of Appeals Division Two, was designated to sit in his stead.