SUPREME COURT OF ARIZONA
En Banc

STATE OF ARIZONA,                    ) Arizona Supreme Court
                                     ) No. CR-99-0296-AP
                    Appellee,        )
                                     ) Pima County
            v.                       ) Superior Court
                                     ) No. CR-61452
KEITH ROYAL PHILLIPS,                )
                                     )
                    Appellant.       ) **O P I N I O N**
                                     )
                                     )
_____    )


Appeal from the Superior Court of Pima County
Honorable Bernard P. Velasco, Judge
REVERSED IN PART; AFFIRMED IN PART

_____

Janet Napolitano, Attorney General                      Phoenix
  By        Kent E. Cattani, Chief Counsel
            Capital Litigation Section
  and       Jack Roberts, Assistant Attorney General
Attorneys for the State of Arizona

Pima County Public Defender                              Tucson
  By        Nancy F. Jones, Deputy Public Defender
            Rebecca A. McLean, Deputy Public Defender
  and       John F. Palumbo, Deputy Public Defender
Attorneys for Phillips

_____

M c G R E G O R, Vice Chief Justice

¶1      The State charged Keith Phillips with fifty-six counts of armed robbery, kidnaping, aggravated assault, and attempted first degree murder for three robberies that occurred in Tucson on April 12, 24, and 28 of 1998, and with one count of first degree murder for the death of Kevin Hendricks that occurred during the third robbery.  The trial court consolidated all three incidents for a

dual jury trial with Phillips' co-defendant, Marcus Finch. Phillips' jury convicted him of first degree felony and premeditated murder, as well as most of the non-homicide counts. Following a sentencing hearing, Judge Bernard P. Velasco sentenced Phillips to death on December 6, 1999. Appeal to this court is automatic and direct when the court imposes a sentence of death. Arizona Revised Statutes (A.R.S.) § 13-703.01 (2001). We exercise jurisdiction pursuant to Article 6, Section 5.3 of the Arizona Constitution, A.R.S. section 13-4031 and Arizona Rule of Criminal Procedure 31.2(b).

## I.

### A.

¶2      At 1:15 a.m. on April 12, 1998, Demien Purdy and his friend Mike sat in their car in the parking lot of Famous Sam's on Silverbell and Grant in Tucson. They saw a gold Chrysler LeBaron convertible driving around the parking lot. The LeBaron stopped for a few moments, left the lot, then returned. Purdy and Mike left the parking lot, but when they returned about ten minutes later, they noticed the LeBaron parked with its lights turned off.

¶3      Around 1:30 a.m. that same day, Marcus Finch and a man with a bandana covering his nose and mouth entered the Famous Sam's on Silverbell and Grant. Witnesses later stated that the man with the bandana was Hispanic or white while his accomplice was black. The black man, Finch, carried a sawed-off rifle and the other man

2

carried a handgun. The robbers ordered the employees into the cooler. When waitress Shelly Raab saw Finch, she dropped to her knees about one arm's length away from him. Finch pointed the sawed-off rifle at her chest, said, "Get in the cooler, bitch," and shot her in the chest. Next, Finch grabbed Raab by the hair and dragged her to the cooler.

¶4 The robbers held office manager Beverly Rochon at gunpoint and told her to lead them to the money. The man wearing a bandana put his gun to Rochon's head and told her she had ten seconds to give him the money or he would put a hole in her head. Rochon gave him all the money she could find and went back into the cooler. The armed men left shortly thereafter.

¶5 Shelly Raab survived, but the bullet fragmented her liver, lung, and stomach, and caused her to lose her spleen, a kidney, and part of her pancreas. Raab's injuries have left her with a permanent limp and frequent numbness in her legs.

**B.**

¶6 At 10:30 p.m. on April 23, 1998, a man came into the Firelight Lounge on Wetmore in Tucson and asked what time the bar closed. Jaimi Ramirez Gilson, the bartender, told him she closed at 1:00 a.m. Ms. Gilson later identified the man as Phillips. Two hours later, Finch walked into the bar and asked for a Killian's Red beer. When Ms. Gilson stepped into the cooler to get the beer, the same man who had asked for the closing time earlier that night

3

walked through the front door with what appeared to be a sawed-off rifle and shouted, "Everybody on the fucking floor or I'm going to blow your brains out." Ms. Gilson tried to hide behind the bar but Finch, who had a handgun, grabbed her by the hair, dragged her to the cash register and told her to open it. After taking the money, Finch dragged her to the men's restroom and threw her inside.

¶7 Meanwhile, the robber identified as Phillips took money from the customers and herded them into the women's restroom when he learned there was no cooler large enough to hold them. As patron Bill Gilson entered the women's restroom, Phillips shot him once in the shoulder and once in the back. Gilson fell into the restroom, where other patrons assisted him. The robbers left the bar and the police arrived shortly thereafter.

¶8 Bill Gilson survived, but one of the bullets collapsed his right lung. In addition, he lost his spleen and part of his liver and remained in a coma for three weeks.

## C.

¶9 Near midnight on April 28, 1998, Finch walked into the Famous Sam's located at Cardinal and Valencia in Tucson and asked Margaret Damron, the bartender, how much a Killian's Red beer cost. When she answered, he told her he was going back to his car to get some change. When Finch returned, he sat down at the bar and ordered a beer. A few minutes later, a man subsequently identified as Phillips walked through the front door with a sawed-off rifle

and opened fire at the backs of customers seated at the bar. Phillips shot Ricardo Herrera in both arms and Mario Rodriguez in one arm. Finch, armed with a handgun, suddenly emerged from a restroom and told one patron, "Get down or I'll fucking shoot you." Finch then saw two customers, Preston Juan and Kevin Hendricks, fleeing out the back door. Finch followed them outside and shot Hendricks in the back twice.

¶10 During this commotion, Damron and a customer, Sandra Sellards, ran into the office and locked the door. Sellards took the telephone and hid under a desk while she called 911. The man identified as Phillips broke into the office, smashed the phone and pointed his gun at Damron's head. As Damron gave Phillips the restaurant's money, Phillips noticed a video monitor and told her, "Give me the tape, bitch, I'm going to fucking kill you." Although the video camera wasn't working, Damron gave him the tape and begged him to leave. Damron emerged from the office thirty seconds after the robbers left.

¶11 Shortly after midnight on April 28, 1998, Pima County Sheriff's Deputy Jeff Englander received a dispatch stating that shots had been fired at the Famous Sam's on Cardinal and Valencia. When he arrived at the restaurant's parking lot, he saw a gold Chrysler LeBaron speeding out of the lot. Englander pursued the LeBaron until it finally pulled over and stopped. Englander ordered two men out of the car and took them into custody.

5

Englander identified the car's occupants as Keith Phillips and Marcus Finch. Inside the car, Englander found money, an empty gun holster on the driver's side where Finch had been sitting, and a sawed-off rifle on the passenger side where Phillips had been seated. Deputy Thomas Adduci, who searched the LeBaron pursuant to a search warrant, found a .38 caliber handgun with a live round in the chamber and three more in the magazine as well as .22 caliber ammunition.

¶12 Some time after Deputy Englander took Finch and Phillips into custody, dispatch informed him that a mall security guard had found a body in the back parking lot of Famous Sam's. The parties stipulated it was the body of Kevin Hendricks. Hendricks died of two gunshot wounds. One bullet entered the right side of Hendricks' back, punctured his right lung, and exited below his collarbone. The other entered the upper part of the left side of his back and lodged in his left lung.

### D.

¶13 At trial, witnesses from all three incidents identified Phillips as one of the two men who committed the robberies. Furthermore, the police investigation revealed that Phillips owned the sawed-off rifle used in all three robberies.

¶14 Phillips claimed misidentification as his sole defense. He sought to establish this defense through discrepancies in the victims' descriptions of the white or Hispanic robber and of the

6

LeBaron; the absence of his fingerprints at the three locations; and some victims' failure to identify him from a photographic lineup.

¶15     Phillips' jury convicted him of several counts of attempted murder, aggravated assault with a deadly weapon, aggravated assault with serious physical injury, kidnaping, armed robbery, and one count of first degree.  The jurors' answer to a special interrogatory indicated they unanimously found both felony and premeditated murder.  Following a sentencing hearing, the trial court found the State proved beyond a reasonable doubt the existence of statutory aggravating factors under A.R.S. sections 13-703.F.5 (expectation of pecuniary gain) and 13-703.F.2 (prior conviction of a serious offense).[1]  After finding only one proved mitigating factor, the court concluded that either of the two aggravating circumstances was sufficient in itself to outweigh the mitigation.

## II.

## A.

¶16     Phillips argues that the counts from the three robberies should have been severed under *State v. Ives*, 187 Ariz. 102, 927 P.2d 762 (1996), because the offenses occurred at different locations and on different days, the gunmen in the first robbery

---

[1]     Ariz. Rev. Stat. (A.R.S.) section 13-703 has been revised so that the F.5 and F.2 aggravating factors are now located at sections 13-703.G.5 and 13-703.G.2.

7

concealed their faces while the gunmen in the two subsequent robberies did not, and only the robbers in the third robbery killed someone.

¶17     We have held that even if a trial court errs in denying a defendant's motion to sever, the error is harmless "[i]f the evidence could have been introduced at separate trials (under Rule 404(b), Ariz. R. Evid.)."  *Id.* at 109, 927 P.2d at 769.  Rule 404(b) states that "evidence of other crimes, wrongs, or acts is . . . admissible for . . . purposes, such as proof of . . . identity."  Arizona Rules of Evidence (Ariz. R. Evid.) 404(b).

¶18     Here, Phillips' sole defense was misidentification.  If Phillips had been tried for each robbery in a separate trial, the State could have introduced evidence of the other robberies under Rule 404(b) for the purpose of proving Phillips' identity.  Thus, the trial court's denial of Phillips' motion to sever, even if erroneous, constitutes harmless error.

**B.**

¶19     After conducting a *Dessureault*[2] hearing, the trial court admitted the photographic lineup from which witnesses identified Phillips.  Phillips argues the lineup was unnecessarily suggestive and, therefore, the trial court erred in not excluding the out-of-court and in-court identifications.  We review the trial court's

---

[2]    *See State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969).

decision under a clear abuse of discretion standard. *State v. Atwood*, 171 Ariz. 576, 603, 832 P.2d 593, 620 (1992).

¶20      Because "[l]ineups need not and usually cannot be ideally constituted . . . the law only requires that they depict individuals who basically resemble one another such that the suspect's photograph does not stand out." *State v. Alvarez*, 145 Ariz. 370, 373, 701 P.2d 1178, 1181 (1985)(citations omitted). For example, a photographic lineup may contain differences in lighting between the defendant's photograph and other photographs. *State v. Gonzales*, 181 Ariz. 502, 509, 892 P.2d 838, 845 (1995).

¶21      Phillips' photographic lineup contains photographs of six men with light skin who appear white or Hispanic. Phillips' photograph, in the sixth position, is taken from a slightly greater distance than the other photographs. As a result, Phillips' head appears somewhat smaller than the heads of the other individuals. The difference between Phillips' photograph and the other photographs is slight. Additionally, all of the photographs are taken from slightly different distances.

¶22      Because the difference between Phillips' photograph and the other photographs does not make Phillips stand out, the trial court did not abuse its discretion in denying the motion to suppress. Because the photographic lineup was not unduly suggestive, the issue whether out-of-court identifications tainted in-court identifications becomes moot. *See Dessureault*, 104 Ariz.

9

at 384, 453 P.2d at 955.

C.

¶23    The trial court excused three potential jurors, Ms. C, Ms. B, and Ms. M, after they expressed their views on the death penalty and their ability to serve. Phillips alleges the trial court excluded the jurors in violation of his right to a fair trial and an impartial jury.

¶24    A trial judge "must excuse any potential jurors who cannot provide assurance that their death penalty views will not affect their ability to decide issues of guilt." *State v. Kayer*, 194 Ariz. 423, 432 ¶ 27, 984 P.2d 31, 40 ¶ 27 (1999). Here, Ms. B and Ms. M expressly stated their views on the death penalty would affect their verdict. Ms. C suggested she might decide issues of guilt independently of her views on the death penalty, but she could not assure the court of this until she spoke with her pastor. She could not even tell the court whether she could serve if her pastor told her to make her own decision. Because these jurors did not assure the court their views would not affect their ability to decide facts in accordance with the law, the trial court did not err.

D.

¶25    Phillips argues the trial court should have admitted evidence that another individual, Michael Locklin, committed the first robbery.

10

¶26    The proffered third-party culpability evidence in this case allegedly showed that Locklin, an African-American man, confessed to committing the first Famous Sam's robbery. Phillips sought to introduce evidence that Locklin had a prior history of robbery and criminal behavior, carried a gun, and that witnesses identified Locklin with a white man at the Famous Sam's on Silverbell the night *before* the first robbery.  In addition, Phillips wanted to offer evidence that police searched Locklin's apartment after the first robbery and found an empty .38 caliber handgun box.

¶27    The trial court relied on *State v. Fulminante*, 161 Ariz. 237, 778 P.2d 602 (1988), to exclude Phillips' evidence of third-party culpability.  In a recent decision, we clarified *Fulminante*'s test for the admission of third-party culpability evidence.  *See State v. Gibson*, 2002 WL 819107 (Ariz. May 1, 2002).  There, we held that "[t]he appropriate analysis [for determining admissibility of evidence of third-party culpability] is found in Rules 401, 402, and 403, Arizona Rules of Evidence."  *Id*. at *2 ¶ 12.  Thus, "[i]nitially, the court must determine if the proffered evidence is relevant."  *Id*. at *2 ¶ 13.  In *Gibson*, we explained that "[t]he proper focus in determining relevancy is the effect the evidence has upon the *defendant's* culpability.  To be relevant, the evidence need only *tend* to create a reasonable doubt as to the defendant's guilt."  *Id*. at *3 ¶ 16.

11

¶28     The evidence Phillips offered was not relevant because even if Phillips could have connected Locklin to the first robbery, evidence that Locklin was the African-American man who committed that crime would not exculpate Phillips, who could have been the white or Hispanic man involved in the robbery.  In addition, evidence that Locklin committed the first robbery would not exculpate Phillips for the second and third robberies.  Because Phillips' proffered evidence did not have a tendency to create a reasonable doubt as to Phillips' guilt, the evidence was not relevant.  Thus, the trial court properly excluded Phillips' third-party culpability evidence.  *See State v. Ring*, 200 Ariz. 267, 276 ¶ 32, 25 P.3d 1139, 1148 ¶ 32 (2001) (a trial court's exclusion of third-party culpability evidence does not constitute harmful error if the evidence "would not have exculpated Defendant for his role in both planning and committing the crimes").

### E.

¶29     After hearing argument, the trial court admitted a photograph of Phillips holding two guns and wearing a bandana around his forehead.  Phillips asserts the court erred because the photograph was not relevant.  Alternatively, Phillips argues the photograph's prejudicial effect outweighs its probative value.

¶30     A trial court has "discretion to admit photographs and will not be reversed absent a clear abuse of that discretion." *State v. Stuard*, 176 Ariz. 589, 602, 863 P.2d 881, 894 (1993).  A

court may admit a photograph that is "relevant to an issue in the case . . . if it helps the jury understand any disputed issue." *Id.* If a photograph is relevant but "would tend to incite passion or inflame the jury, [its] probative value must be weighed against any unfair prejudice caused by admission." *Id.*

¶31     Here, the disputed photograph depicts Phillips holding two handguns. One gun looks black and the other appears to be chrome or silver. At trial, a witness to the first robbery stated that one of the robbers carried a chrome or silver gun. The photograph is relevant to whether Phillips committed the first robbery because the description of one of the guns used on April 12 matches one of the guns in the photograph. Furthermore, Phillips does not explain how the photograph's prejudicial effect outweighs its probative value. The trial court did not err.

## F.

¶32     Phillips' jury unanimously convicted him of felony murder and premeditated murder. Phillips asserts he cannot be guilty of the specific intent crime of premeditated murder because he neither intended to shoot or kill Hendricks nor physically shot and killed Hendricks.

¶33     In Arizona, a person commits premeditated murder if, "[i]ntending or knowing that [his] conduct will cause death, [he] causes the death of another with premeditation." A.R.S. § 13-1105.A.1. To show premeditation, the "state must prove that the

13

defendant acted with either the intent or knowledge that he would kill his victim." *State v. Murray*, 184 Ariz. 9, 32, 906 P.2d 542, 565 (1995).

¶34    The State does not argue that Phillips intended to kill Hendricks. Rather, the State argues a jury can convict a defendant of premeditated murder if the defendant agrees to commit a crime with another and in the course of committing that crime, the defendant's accomplice commits a murder that the defendant reasonably should have foreseen. Arizona's accomplice liability statutes do not permit that result.

¶35    In Arizona, a defendant "is criminally accountable for the conduct of [his accomplices]" if he aids those accomplices in "the commission of *an offense*." A.R.S. § 13-303.A.3 (emphasis added). The State interprets section 13-303.A.3 as making a defendant liable for *all* acts of an accomplice as long as the defendant aided the accomplice in planning or committing *any* related offense.

¶36    The State's position ignores the definition of accomplice provided by section 13-301.2. That section defines an accomplice as "a person . . . who with the intent to promote or facilitate the commission of an offense . . . [a]ids, counsels, agrees to aid or attempts to aid another person in planning or committing the offense." A.R.S. § 13-301.2. As the definition makes clear, a defendant is an accomplice to an offense only if, intending to aid

14

another in committing *an offense*, he "[a]ids, counsels, agrees to aid or attempts to aid another person in planning or committing *the offense*." *Id.* (emphasis added). For example, a defendant who intends to aid another in committing a robbery is an accomplice to that robbery. Under section 13-303.A.3, therefore, the defendant would be liable for the planned robbery even though the defendant's accomplice actually committed the robbery.

¶37 Construing section 13-303.A.3 in a manner that would hold a defendant liable for offenses he did not intend to aid another in committing, on the other hand, would extend accomplice liability to a defendant who does not even qualify as an accomplice under section 13-301.2. For example, the State's construction of section 13-303.A.3 would allow a defendant who did *not* intend to aid in an offense to be an accomplice *to that offense*. To avoid this absurd result, we hold that section 13-303.A.3 imposes criminal accountability on an accomplice defendant only for those offenses the defendant intended to aid or aided another in planning or committing. In this case, if Phillips did not intend to aid Finch in committing murder, he could not be an accomplice *to murder* under the terms of the statute.

¶38 Convicting a defendant of premeditated murder by way of the accomplice liability statute would create other anomalous results as well. First, as the State itself conceded during oral argument, interpreting accomplice liability as negating the

15

specific intent requirement of premeditated murder essentially allows the State to convict a defendant of felony murder without proving all the elements of felony murder.

¶39 A felony murder conviction requires the State to prove that the defendant, alone or with others, committed or attempted to commit a felony and, "*in the course of and in furtherance of" that felony*, the defendant or another person caused the death of any person. A.R.S. § 13-1105.A.2 (emphasis added). In contrast, the State's theory using accomplice liability would permit the State to convict a defendant of first degree murder whenever his accomplice commits murder during the commission of the underlying offense. That theory would relieve the State from showing that the defendant's accomplice committed the murder in the course of and in furtherance of the underlying offense, a showing essential to establish a charge of felony murder. The legislature could not have intended such an anomalous result.[3]

¶40 Furthermore, by extending accomplice liability to premeditated murder, the State's position ignores the specific intent requirement of premeditated murder. As a result, the State's construction of section 13-303.A.3 first transforms

---

[3] The State's argument also raises due process concerns. Arizona's felony murder and accomplice statutes do not clearly give notice that accomplice liability can provide a basis for a charge of premeditated murder. *See Lanzetta v. New Jersey*, 306 U.S. 451, 452, 59 S. Ct. 618, 619 (1939) (criminal provisions must clearly define the conduct prohibited and the punishment authorized to satisfy the notice requirements of the Due Process Clause).

16

accomplice liability into a lesser form of felony murder and then conflates felony murder with premeditated murder. Arizona law provides no support for the State's position, which would eliminate the essential distinction between felony murder and premeditated murder. *State v. Styers*, 177 Ariz. 104, 110-11, 865 P.2d 765, 771-72 (1993) (although felony murder and premeditated murder are both first degree murder, a defendant's specific intent to kill differentiates premeditated murder from felony murder); *see also State v. Walton*, 159 Ariz. 571, 584, 769 P.2d 1017, 1030 (1989).

**¶41** In this case, Phillips acted as Finch's accomplice for purposes of the robberies committed on April 12, 24, and 28, 1998, because he intended to facilitate and did aid Finch in committing those robberies. *See* A.R.S. § 13-301.2. Under section 13-303.A.3, Phillips can be held criminally accountable for the robberies committed by Finch. Phillips cannot, however, be classified as Finch's accomplice for the crime of premeditated murder because the evidence did not show that he intended to facilitate or aid in committing a murder.[4] Accordingly, we reverse Phillips' premeditated murder conviction.[5]

---

[4] In *State v. Marchesano*, 162 Ariz. 308, 315, 783 P.2d 247, 254 (App. 1989), the court of appeals held that a defendant may be liable for attempted premeditated murder under a theory of accomplice liability. We disapprove *Marchesano* to the extent it conflicts with today's holding.

[5] Because we vacate Phillips' premeditated murder conviction, we do not address Phillips' argument that the trial court erred in failing to dismiss his premeditated murder

## G.

¶42     Phillips also challenges his felony murder conviction. He argues the State could not have proved felony murder beyond a reasonable doubt because the trial court's special verdict in Finch's case stated that Finch engaged in an act of gratuitous murder when he shot and killed Hendricks.  Phillips reasons that because Arizona's felony murder statute does not include gratuitous murder, no felony murder occurred.

¶43     To prove felony murder, the State must show that the defendant, acting alone as a principal or with one or more other persons, commits or attempts to commit a felony "and in the course of and in furtherance of the offense or immediate flight from the offense, the person or another person causes the death of any person."  A.R.S. § 13-1105.A.2.

¶44     Phillips, acting with Finch, committed a felony.  Finch shot and killed Hendricks during the course of that felony so he and Phillips could successfully complete the robbery without detection.  Because the State demonstrated that Phillips committed a felony and that Hendricks was murdered in the course of and to further that felony, the evidence at trial sustains Phillips' felony murder conviction.

conviction.

18

¶45     Phillips claims the prosecutor's allegedly inflammatory and improper statements violated his right to a fair trial. The trial court denied Phillips' motion for mistrial based on prosecutorial misconduct. Phillips did not object to the prosecutor's allegedly inflammatory statements during closing arguments.

¶46     We will not disturb a trial court's order denying a motion for mistrial based on prosecutorial misconduct absent a clear abuse of discretion. *State v. Lee*, 189 Ariz. 608, 616, 944 P.2d 1222, 1230 (1997). We consider whether the prosecutor's statements "called jurors' attention to matters the jury was not justified in considering in determining its verdict" and "the probability that the jurors were in fact influenced by the remarks." *Id*.

¶47     Phillips moved for mistrial because the prosecutor's opening arguments referred to Phillips' actions as terrorizing; described victims as cowering, hiding, and praying to God Almighty; and stated that Phillips appeared outraged, beyond control, and absolutely terrifying. The prosecutor's statements did not call jurors' attention to matters the jury could not consider because Phillips' actions and state of mind were relevant to the charges against him. Moreover, if the prosecutor's statements constituted improper opening remarks, they simply repeated witness testimony

19

regarding those same facts. Thus, the trial court did not abuse its discretion in denying Phillips' motion for mistrial.

¶48 Because Phillips did not object to the prosecutor's statements during closing arguments, we review for fundamental error only. *State v. Valdez*, 160 Ariz. 9, 13-14, 770 P.2d 313, 317-18 (1989). Fundamental error "goes to the heart of the defendant's case or takes from him a right essential to his defense." *Id*. Phillips claims the State violated his rights when the prosecutor stated that several pieces of evidence offered by the defense were "one way of trying to confuse you about the issues in this case," and again when the prosecutor, in talking about a defense quotation from a book called *Basic Truths*, described "some irony there perhaps in terms of what the defense is based on." Neither of these statements goes to Phillips' defense, which is based on misidentification. The trial court's denial of Phillips' motion for mistrial did not constitute fundamental error.

### III.

### A.

¶49 The death penalty may not be imposed for a felony murder conviction "unless the defendant was a major participant in the underlying felony and acted with reckless disregard for human life." *State v. Nordstrom*, 200 Ariz. 229, 256 ¶ 94, 25 P.3d 717, 744 ¶ 94 (2001) (citing *Tison v. Arizona*, 481 U.S. 137, 158, 107 S.

20

Ct. 1676, 1688 (1987); *Enmund v. Florida*, 458 U.S. 782, 797, 102 S. Ct. 3368, 3377 (1982)). In its special verdict, the trial court stated that although Phillips did not fire the gun that killed Kevin Hendricks, he substantially participated in the underlying felonies and showed a reckless indifference to human life. Because Phillips not only fully participated in planning and carrying out the April 28 robbery but also indiscriminately fired into a group of customers at the Famous Sam's restaurant, the trial court correctly found the *Enmund/Tison* factors satisfied.

**B.**

¶50    Phillips asserts the trial court improperly considered victim impact statements in preparing its special verdict. We disagree.

¶51    Absent indication to the contrary, we presume that a trial court considered only evidence properly related to its sentencing decision. *State v. Clabourne*, 194 Ariz. 379, 390, ¶ 53 983 P.2d 748, 759 ¶ 53 (1999). Although a trial court may not consider victim impact statements for purposes of finding aggravation, a court may consider such statements to "rebut the defendant's mitigation evidence." *State v. Mann*, 188 Ariz. 220, 228, 934 P.2d 784, 792 (1997).

¶52    In its special verdict, the trial court explicitly noted that it did not consider any presentence report or victim impact

21

information with respect to the aggravating factors.  Furthermore, nothing in the trial court's sentencing memorandum suggests it considered victim impact statements when finding the aggravators.

## C.

¶53     Phillips challenges the court's finding with respect to aggravating factors.  First, Phillips argues the trial court erred in finding he committed Hendricks' murder for pecuniary gain because he did not physically kill Hendricks.

¶54     When a defendant commits murder "as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value," the court shall consider this an aggravating circumstance.  A.R.S. § 13-703.F.5 (2001).  In *State v. Sansing*, 200 Ariz. 347, 353 ¶ 13, 26 P.3d 1118, 1124 ¶ 13 (2001), we held that "[a] murder committed in the context of a robbery or burglary is not per se motivated by pecuniary gain.  Rather, we reserve the death penalty for murders committed during a robbery or burglary for those cases in which the facts clearly indicate a connection between a pecuniary motive and the killing itself."  Furthermore, "[w]hether the needed connection exists between expected pecuniary gain and the motive for killing involves a highly fact-intensive inquiry." *Id*. at 354 ¶ 15, 26 P.3d at 1125 ¶ 15.

¶55     The trial court correctly found F.5 because Phillips' expectation of pecuniary gain and the murder of Hendricks are

22

clearly connected. Specifically, Phillips' desire for money caused him to fire into a bar full of people, and hearing shots fired in the restaurant resulted in Hendricks' escape attempt. Finch followed and shot Hendricks to permit him and Phillips to obtain and keep the robbery proceeds. Accordingly, we affirm the trial court's F.5 finding.

¶56    Second, Phillips asserts the trial court erred in finding the F.2 aggravator because the court considered convictions from the third robbery. An aggravating circumstance exists when "[t]he defendant was previously convicted of a serious offense, whether preparatory or completed." A.R.S. § 13-703.F.2. (2001). Convictions for crimes consolidated for trial purposes with the murder charge satisfy F.2. *State v. Gretzler*, 135 Ariz. 42, 57, 659 P.2d 1, 16 (1983). Convictions which arise from the same set of events as the murder charge, however, should not be considered when determining the existence of the F.2 factor. *Id.* at 57 n.2, 659 P.2d at 16 n.2.

¶57    In finding F.2, the trial court considered Phillips' convictions from the Famous Sam's on Silverbell, the Firelight Lounge, and the Famous Sam's on Valencia. While the trial court correctly considered Phillips' convictions from the first two robberies, it erred in relying on the convictions from the third robbery. Phillips' twenty-five convictions for armed robbery,

23

kidnaping, and aggravated assault from the first and second robberies, however, satisfy F.2. In addition, Phillips had been convicted of armed robbery and aggravated assault in September 1998 for a robbery he committed on April 26, 1998. Therefore, the trial court's F.2 finding is supported.

### D.

¶58 Phillips asserts the trial court erred in not finding or not giving adequate weight to several mitigating factors. We disagree.

### 1.

¶59 The trial court rejected Phillips' claim that his use of crack cocaine on the night of the third robbery, a history of substance abuse, and a difficult childhood significantly impaired his capacity to appreciate the wrongfulness of his conduct.

¶60 A statutory mitigating factor exists when "[t]he defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution." A.R.S. § 13-703.G.1 (2001).[6] Here, Phillips' video-taped confession, taken no more than two hours after his arrest, does not demonstrate any impairment. Rather, the

---

[6] A.R.S. section 13-703.G.1 is now found at section 13-703.H.1. (Supp. 2001).

24

video depicts Phillips clearly and coherently answering questions regarding all three robberies. Additionally, Phillips told officers he did not use drugs during the third robbery even though he had been using drugs since the first robbery. Moreover, unsubstantiated, self-reported drug use is insufficient to establish this mitigating factor. *State v. Poyson*, 198 Ariz. 70, 80 ¶ 33, 7 P.3d 79, 89 ¶ 33 (2000). Because Phillips presented minimal evidence that he was using crack cocaine when he committed the third robbery and no evidence he was impaired during the third robbery, the trial court did not err.

**¶61** Similarly, although Phillips presented evidence of substance abuse and a difficult childhood, he did not offer any evidence that these factors caused him to commit the robberies. *See State v. Jones*, 188 Ariz. 388, 400, 937 P.2d 310, 322 (1997) (holding a history of substance abuse is not mitigating unless the defendant proves the drug usage impaired his ability to appreciate the wrongfulness of his conduct); *Clabourne*, 194 Ariz. at 387 ¶ 35, 983 P.2d at 756 ¶ 35 (holding a difficult childhood is not mitigating unless the defendant can "link his family background to his murderous conduct or to otherwise show how it affected his behavior"). The trial court did not err in rejecting this mitigating factor.

25

2.

¶**62**      Phillips asserts his minor participation in Hendricks' death as a mitigating factor.  The evidence at trial, however, showed that Phillips initiated the third robbery by opening fire into a bar full of patrons.  Hendricks fled as a result of Phillips' firing, and Finch shot and killed Hendricks because he tried to escape.  Because Phillips' actions recklessly endangered human life, the trial court correctly found minor participation unproven.

3.

¶**63**      The trial court also rejected Phillips' age as a mitigating circumstance because although Phillips was only 20 years old when he committed the robberies, he acted in an experienced, determined, and deliberate manner.

¶**64**      In considering age as a mitigator, a trial court should consider a defendant's level of intelligence, maturity, participation in the murder, and criminal history.  *Id.* at 386 ¶ 28, 983 P.2d at 755 ¶ 28.  Additionally, "average level of intelligence" and "major participa[tion] in the crime . . . have tended to weigh against age as a mitigating circumstance." *Id*. at 386 ¶ 29, 983 P.2d at 755 ¶ 29.

¶**65**      Phillips does not dispute that he possesses average intelligence.  More importantly, he substantially participated in

26

the crime, not only by opening fire into Famous Sam's but also by planning the robberies and providing the weapons and vehicle for the robberies.  We affirm the trial court's finding.

4.

¶66      Phillips argues the trial court erroneously rejected familial responsibility as a mitigator because he lived with and supported his wife and two adopted stepdaughters.

¶67      The only testimony regarding Phillips' relationship with his wife and daughters came from Chess Sexton, Phillips' mother's former husband, and Cecelia Dexter, Phillips' adoptive mother's mother.  Sexton simply stated he thought Phillips was close to his wife and stepdaughters.  Likewise, Dexter, who had never met Phillips' wife or children, stated she had received a Christmas card from Phillips depicting his wife and stepdaughters. Phillips' wife did not testify that he assumed family responsibility.  The trial court did not err.

5.

¶68      The trial court rejected family support as a mitigator because although Phillips proved he enjoys the love and support of his family, his family's love and his love of them did not keep him from engaging in murderous conduct.  Familial support, alone, is insufficient to overcome aggravation.  *See State v. Rienhardt*, 190 Ariz. 579, 592, 951 P.2d 454, 467 (1997).  Thus, the trial court

27

did not err.

6.

**¶69**     Phillips argues he proved remorse when he delivered an apologetic statement to the victims and victims' families at his aggravation and mitigation hearing.  The trial court, however, did not find remorse.

**¶70**     "Where the trial judge disbelieves a defendant's statements claiming remorse, the circumstance is generally not established."  *State v. Schackart*, 190 Ariz. 238, 253-54, 947 P.2d 315, 330-31 (1997).  Because the trial court observed Phillips throughout his trial and sentencing, we affirm its finding that this mitigator was unproven.

7.

**¶71**     In its special verdict, the trial court stated it would not consider Phillips' felony murder conviction as a mitigating factor because the jury unanimously found the defendant guilty of first degree premeditated murder in addition to felony murder. Because we reverse Phillips' premeditated murder conviction today, we consider whether Phillips' lack of intent to kill is a mitigating factor.

**¶72**     A felony murder verdict's mitigating potential is offset by a defendant's "major participation in the planning and execution of the crime."  *State v. Dickens*, 187 Ariz. 1, 25, 926 P.2d 468,

28

492 (1996). Phillips acted as a major participant in the planning and execution of the three robberies culminating in the death of Kevin Hendricks. Therefore, we give no weight to Phillips' felony murder conviction as a mitigating factor.

E.

¶73    Phillips also argues the trial court did not consider his statutory mitigating factors as nonstatutory mitigators because the special verdict does not discuss Phillips' history of substance abuse, his difficult childhood, his alleged minor participation, and his age as nonstatutory mitigating factors.

¶74    A trial court's special verdict need not be "a laundry list of findings on every nuance or every issue raised by a defendant." *State v. Kiles*, 175 Ariz. 358, 369, 857 P.2d 1212, 1223 (1993). Rather, the trial court need only consider the evidence and resolve the relevant factual issues. *Id*. Because the only support for Phillips' argument is that the trial court did not discuss statutory mitigators as nonstatutory mitigators, we find no error.

F.

¶75    Phillips next claims the trial court improperly considered Finch's confession during his sentencing. Specifically, Phillips states the trial court erred when it adopted as proven beyond a reasonable doubt certain factual statements, which

29

Phillips alleges were derived from Finch's confession, set forth in the State's sentencing memorandum. Phillips also argues that the trial court considered Finch's statements when concluding that Phillips provided the car, guns, and impetus to start the last round of robberies, kidnapings, and aggravated assaults.

¶76 Phillips fails to demonstrate that the trial court considered Finch's statements when it incorporated the State's sentencing memorandum into its special verdict and found that Phillips provided the car, guns and impetus to commit the third robbery. Phillips' video-taped confession contained all the factual information Phillips claims the trial court derived from Finch's confession. We find no error.

### G.

¶77 The trial court relied on Phillips' prior felony convictions from the robbery he committed alone on April 26, 1998, to enhance his non-homicide convictions from the April 12, 24, and 28 robberies. Phillips argues that because he was not convicted of the April 26 robbery until after he had committed the April 12, 24, and 28 robberies, the trial court could not use the April 26 convictions.

¶78 We have previously rejected this argument. A trial court may use a prior felony conviction for enhancement purposes whenever "the conviction on the prior offense . . . precede[s] the

conviction on the present offense." *State v. Thompson*, 200 Ariz. 439, 441 ¶¶ 6-7, 27 P.3d 796, 798 ¶¶ 6-7 (2001). Phillips' convictions from the April 26 robbery were entered before his convictions for the April 12, 24, and 28 robberies. Thus, the trial court correctly concluded that Phillips' April 26 convictions constituted historical prior felonies for purposes of enhancing the non-homicide sentences stemming from the April 12, 24, and 28 robberies.

### H.

¶79     Recognizing that the Ninth Circuit Court of Appeals upheld dual juries in *Lambright v. Stewart*, 191 F.3d 1181, 1186 (1999), Phillips argues that the trial court's use of dual juries violated his constitutional rights.

¶80     A trial court has discretion to use dual juries. *Hedlund v. Sheldon*, 173 Ariz. 143, 145, 840 P.2d 1008, 1010 (1992). Furthermore, the use of dual juries is "not inherently prejudicial" to the defendant. *Id*. Because Phillips fails to demonstrate that the trial court's use of dual juries violated his rights, we find no error.

### IV.

¶81     The trial court correctly found the F.5 and F.2 aggravating factors in this case. Phillips' only proven mitigation consisted of the support he receives from his family.

31

Independently considering those factors, we conclude the aggravating circumstances far outweigh the mitigators.

## V.

**¶82** Phillips states that he joins Finch's arguments on the trial court's reasonable doubt instruction,[7] on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), on pecuniary gain, and on issues raised to avoid preclusion. We reject those arguments for the reasons set forth in *State v. Finch*, ___ Ariz. ___, ___ P.3d ___ (2002).

## VI.

**¶83** For the foregoing reasons, we reverse Phillips' conviction for premeditated murder and affirm his remaining convictions and sentences.

_____
Ruth V. McGregor, Vice Chief Justice

CONCURRING:

_____
Charles E. Jones, Chief Justice

_____

[7] *See State v. Portillo*, 182 Ariz. 592, 898 P.2d 970 (1995).

32

_____
Stanley G. Feldman, Justice


_____
Thomas A. Zlaket, Justice (Retired)


_____
Edward C. Voss, Judge*


     *Pursuant to Ariz. Const. Article VI, Section 3, the Honorable Edward C. Voss, Chief Judge of the Court of Appeals, Division One, was designated to sit on this case.

33