NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

NERY EFRAIN BLAS ORTIZ, *Appellant.*

No. 1 CA-CR 13-0762
FILED 11-22-2016

---

Appeal from the Superior Court in Maricopa County
No. CR2008-009274-001
The Honorable William L. Brotherton Jr., Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist
*Counsel for Appellee*

Maricopa County Public Advocate's Office, Phoenix
By Stephen Whelihan
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge John C. Gemmill and Chief Judge Diane M. Johnsen joined.[1]

---

**K E S S L E R**, Judge:

¶1          Nery Efrain Blas Ortiz ("Appellant") appeals his conviction for three counts of first degree murder.  He argues the evidence was insufficient to conclude that he committed premeditated murder.  For the reasons that follow, we affirm.

### FACTUAL AND PROCEDURAL HISTORY[2]

¶2          Appellant was a *coyote*, or a human smuggler, engaged in the business of transporting undocumented immigrants from Mexico to the United States for profit.  He, along with Luis Gonzalez (aka "Sergio") and Claudio Lopez ("Claudio"), worked for Miguel Lozano Franco ("Miguel"). Appellant's primary job in the smuggling operation was to pick up trash left behind by the undocumented immigrants.

¶3          In or around December 2005, Sergio received a phone call from Julian Godinez Reyes (aka "Flaco"), Miguel's former employee.  Flaco told Sergio he was planning to "take people from [Miguel]," meaning that Flaco wanted to undercut Miguel's business in transporting smuggled immigrants.  Flaco attempted to solicit Sergio's help.  When Miguel learned of Flaco's plan, he began to monitor Sergio's conversations with Flaco. Eventually, Miguel told Sergio to offer to help Flaco with his plan to "steal the people."  Over the next few weeks, Sergio and Flaco finalized the details of the plan over the phone, and Sergio reported the conversations to Miguel. Miguel made it known to Sergio that he wanted to meet with Flaco personally to "take care of his stuff."

---

[1]     The Honorable John C. Gemmill, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]     We review the evidence in the record in the light most favorably to affirming the judgment.  *State v. Pena*, 209 Ariz. 503, ¶ 7, 104 P.3d 873, 875 (App. 2005).

¶4        In February 2006, Miguel and his employees, including Appellant, were preparing to pick up a group of people coming into Arizona from Mexico when Sergio learned that Flaco was planning to steal the people from Miguel.  The group traveled to a staging location in the desert west of Phoenix, where Miguel told the group that he was going to "give [Flaco] what he deserved."  Miguel then told Appellant and Claudio to accompany him, and the three men left the staging area in a white SUV.  When they left, all three men were armed with 9 millimeter pistols; Miguel also carried an assault rifle.

¶5        At Miguel's request, Sergio informed Flaco of the location and color of the SUV and led Flaco to believe that it contained immigrants for him to steal.[3]  Flaco and his men, who were driving a black SUV, eventually spotted the white SUV and began to follow it.  The two vehicles stopped, and Miguel stepped out and opened fire on the black SUV, shouting that "no one was going to take his people from him."  Appellant climbed out of the white SUV after someone opened the back door, and Miguel ordered Appellant to fire his weapon.  Appellant complied with Miguel's order.

¶6        Flaco was shot while still in the driver's seat of the black SUV and fell out of the opened door onto the ground.  Miguel then approached Flaco and fired the AK-47 into the back of his head.  Flaco's two men fled into the desert. One was killed forty yards from the black SUV.  Miguel and Appellant chased and eventually overtook the third man, who pled for his life before Miguel shot him three times at close range with a pistol.

¶7        The State indicted Appellant on one count of assisting a criminal syndicate, three counts of conspiracy to commit first-degree murder, three counts of first-degree murder, and one count of conspiracy to commit human smuggling.  A jury convicted Appellant of assisting a criminal syndicate, conspiracy to commit smuggling, and all three murder counts, but acquitted Appellant of conspiracy to commit murder.  The trial court sentenced Appellant to concurrent terms of life with the possibility of release after twenty-five years on all three murder counts. Concurrent with the murder sentences, the court also imposed two presumptive 2.5 year terms for assisting a criminal syndicate and conspiracy to commit smuggling offenses.  Appellant filed a timely notice of appeal from his

---

[3]      Miguel had Appellant sit in the back of the SUV to lead Flaco into believing it was full of people.

convictions and sentences, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 13-4033(A) (2010).

**DISCUSSION**

I. Sufficiency of the Evidence

**¶8** Appellant argues the evidence presented at trial was insufficient to support the three first degree murder convictions. We review the sufficiency of the evidence de novo, *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011) (citation omitted), and we will not "reweigh" the evidence to decide whether we would reach the same conclusion as the trier of fact, *State v. Guerra*, 161 Ariz. 289, 293 (1989) (citations omitted). Rather, when there is a claim of insufficient evidence, "we view the evidence in the light most favorable to sustaining the verdict and reverse only if no substantial evidence supports the conviction." *State v. Pena*, 209 Ariz. 503, 505, ¶ 7 (App. 2005) (citation omitted). Substantial evidence is evidence that reasonable persons could accept as adequate to find a defendant guilty beyond a reasonable doubt. *State v. Stroud*, 209 Ariz. 410, 412, ¶ 6 (2005) (citations omitted).

**¶9** A person commits first degree murder if "[i]ntending or knowing that the person's conduct will cause death, the person causes the death of another person . . . with premeditation." A.R.S. § 13-1105(A)(1) (2006). At the time of the offenses here, a person could be liable as an accomplice under A.R.S. § 13-303(A)(3) (2006)[4] "only for those offenses the defendant intended to aid or aided another in planning or committing." *State v. Phillips*, 202 Ariz. 427, 436, ¶ 37 (2002), *supplemented on other grounds*, 205 Ariz. 145 (2003). An accomplice is:

> [A] person . . . who with the intent to promote or facilitate the commission of an offense:

---

[4]  In 2006, A.R.S. § 13-303(A)(3) provided that "[a] person is criminally accountable for the conduct of another if . . . [t]he person is an accomplice of such other person in the commission of an offense." A.R.S. § 13-303(A)(3) (2006). The Arizona Legislature amended A.R.S. § 13-303(A)(3) in 2008 to read "[t]he person is an accomplice of such other person in the commission of an offense including any offense that is a natural and probable or reasonably foreseeable consequence of the offence for which the person was an accomplice." A.R.S. § 13-303(A)(3) (2008).

1. Solicits or commands another person to commit the offense; or

2. Aids, counsels, agrees to aid or attempts to aid another person in planning or committing an offense.

3. Provides means or opportunity to another person to commit the offense.

A.R.S. § 13-301 (2006).

**¶10**      In light of the evidence presented at trial, a reasonable jury could have found Appellant guilty of first degree murder as an accomplice because he either aided or intended to aid in killing Flaco and his men.[5] First, the jury could have concluded Appellant knew Miguel intended to cause the death of another, but still agreed to accompany Miguel and Claudio in the white SUV. Miguel made statements to the group, including Appellant, at the staging area, that he was going to give Flaco what he deserved. Before they left, Appellant argued with Miguel, saying that "he didn't want to go," but Appellant nevertheless left with Miguel and Claudio in the white SUV. At that point, all the men, including Appellant were armed. While brandishing a deadly weapon and when leaving the desert, Miguel made statements to Appellant declaring that "no one robs me, my people." Appellant told police that while he was in the SUV he knew Miguel's plan was to find a deserted street, and assumed that was so Miguel could shoot the victims. Furthermore, when they left, Appellant was armed with a loaded 9 millimeter pistol. *See State v. Nelson*, 229 Ariz. 180, 185, ¶ 16 (2012) (finding that bringing the murder weapon to the scene is strong evidence of premeditation).

**¶11**      Second, evidence presented at trial shows that after they left the staging area in the white SUV, Appellant aided or attempted to aid Miguel and Claudio in the shootings. Appellant first stated to police that he shot only at the ground, and only because Miguel forced him to shoot. But Appellant later stated that he shot at victims inside the black vehicle; even later, he stated he could not remember whether the victims were still inside the vehicle when he fired. Sergio also testified that Appellant admitted to shooting at the victims in the black vehicle. Although the evidence regarding where Appellant aimed his pistol as he shot is conflicting, it is sufficient to support the jury's ultimate determination. *See State v. Buccheri-Bianca*, 233 Ariz. 324, 334, ¶ 39 (App. 2013) (explaining that

---

[5]      The jury was properly instructed on accomplice liability.

inconsistencies in evidence are "matters for the jury's consideration in making its credibility determinations and weighing the evidence"). Based on Appellant's statements to the police and Sergio's testimony, the jury could reasonably have found that Appellant intended to and did aid the others in killing two of the three victims by firing at the black vehicle.

¶12        Finally, Appellant told police that he followed Miguel with his pistol as Miguel chased the third victim. Appellant stated that "Miguel was running in front of me and told me that if—that if I didn't go after him, he was going to kill me." The evidence allowed the jury to conclude that Appellant followed Miguel and was present either just before or during Miguel's murder of the third victim. The jury could have reasonably found Appellant's pursuit of the victim increased the odds of Miguel finding the victim in the desert, and that Appellant's presence provided Miguel with backup in case the victim offered resistance. Thus, the jury could reasonably believe that Appellant aided Miguel in killing the third victim.

¶13        We will not we set aside a jury verdict for insufficient evidence unless the record clearly demonstrates that under no hypothesis whatsoever "is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo*, 155 Ariz. 314, 316 (1987). Here, a reasonable person could, beyond a reasonable doubt, find Appellant guilty as an accomplice because the record contains sufficient evidence to support a finding that he aided or intended to aid in the murders. *See Phillips*, 202 Ariz. at 436, ¶ 37.

II.    Duress as a Defense

¶14        Relying on *Phillips*, Appellant argues that he may only be liable as an accomplice for those offenses he intended to aid or aided another in planning or committing, 202 Ariz. at 436, ¶ 37, and because he acted under duress, he could not have formed the requisite intent to aid the others in the killings. The Arizona Supreme Court rejected that argument in *State v. Ellison*, 213 Ariz. 116, 134, ¶ 69 (2006), holding that "we now decline to recognize duress as a defense to accomplice liability for murder . . . If a defendant has the specific intent to assist in murder, even though his sole motivation is duress, *Phillips* is satisfied." An accomplice's

premeditative intent can by proved by circumstantial evidence. *See State v. Hernandez*, 232 Ariz. 313, 324, ¶ 53 (2013) (citations omitted).[6]

**¶15** As outlined above, *see supra* ¶¶ 10-12, a reasonable fact-finder could have inferred that Appellant intentionally aided or assisted in killing Flaco and his men, even if his sole motivation for doing so was duress. Viewing the evidence in the light most favorable to affirming the convictions, a reasonable jury could have concluded that Appellant knew Miguel planned to kill Flaco and his men and intentionally assisted Miguel in doing so. Because we find substantial evidence to support the trial verdicts, we will not reverse.

**CONCLUSION**

**¶16** For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

6       In a supplemental citation of authority, Appellant cites to *State ex rel. Thomas v. Duncan*, 216 Ariz. 260 (App. 2007), to support his argument that a justification for conduct can be used to show the lack of the necessary *mens rea*. In *Duncan*, we held that the superior court did not err in denying the State's motion to preclude evidence that the defendant was trying to escape a chasing vehicle when he struck and killed the victim. We reasoned that the evidence was relevant to whether the defendant was guilty of manslaughter, requiring that he recklessly caused the death of another because he was aware of and consciously disregarded a risk. *Id.* at 264-65, ¶¶ 12-17. We disagree with Appellant. While trying to escape from a purported attack might be relevant to whether a defendant was aware of and consciously disregarded a risk of injuring another, our supreme court in *Ellison* expressly held that acting under duress does not preclude forming a specific intent to kill another.